22964

The STATE, Respondent v. Thomas Eugene DAWKINS, Appellant.
(377 S. E. (2d) 298)

Supreme Court

*John D. Delgado,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *William Edgar Salter, III,* and *Sol. James C. Anders,* Columbia, *for respondent.*

Heard Dec. 5, 1988.

Decided Feb. 21, 1989.

TOAL, Justice:

The defendant, Gene Dawkins, was convicted of two counts of criminal sexual conduct against a minor. He was acquitted of two other counts of the same crime. Dawkins was sentenced to two 30 year terms, to be served con-

secutively. The issues raised on appeal involve acts of alleged prosecutorial misconduct.

Before discussing the issues of this case, we note that this matter might never have been appealed nor would this conviction be subject to attack but for the overzealousness of the assistant solicitor. This case is a prime example of a prosecutor striving to obtain a conviction regardless of the costs, only to have the conviction reduced to vulnerability because of the improper tactics utilized. Had it not been for the wisdom and expertise of the trial judge, the errors committed by the prosecutor could not have been cured.

We caution prosecutors throughout this state to be mindful of the words of Mr. Justice Sutherland:

> "The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Berger v. United States*, 295 U. S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935).

## A. INDICTMENTS

The defendant argues that his motion to quash the indictments should have been granted. He contends that four indictments were vindictively filed against him after he refused to plead guilty to one indictment. He also argues that the indictments should have been quashed because they were obtained after the assistant solicitor appeared before the grand jury. We disagree.

The grand jury, after hearing testimony from prosecuting witnesses, originally returned on July 14, 1986, one indict-

ment for criminal sexual conduct for acts allegedly occurring sometime between February 1982 and April 1984. In October 1986, Dawkins' attorney, the solicitor and a private attorney allegedly representing the minor's family, met to negotiate a plea bargain. The solicitor recommended a 15 year sentence for a guilty plea on the one count indictment. This proposal was rejected by Dawkins.

On October 14, 1986, Dawkins filed a Motion in Limine, by which he *inter alia*, sought to quash the July 14 indictment based on the lack of specificity as to the time, day, month and year for the crime.

On October 16, 1986, the assistant solicitor appeared before the grand jury without any prosecuting witnesses. Four separate indictments were returned, each alleging criminal sexual conduct in the first degree occurring on specific dates.

It is clear that an accused may not be punished for exercising a constitutional right. *Blackledge v. Perry*, 417 U. S. 21, 94 S. Ct. 2098, 40 L. Ed. (2d) 628 (1974). To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic kind. *Bordenkircher v. Hayes*, 434 U. S. 357, 98 S. Ct. 663, 54 L. Ed. (2d) 604 (1978). The United States Supreme Court, however, has also stated that there is no presumption of prosecutorial vindictiveness when a prosecutor files additional charges after a defendant refuses a plea bargain. *United States v. Goodwin*, 457 U. S. 368, 102 S. Ct. 2485, 73 L. Ed. (2d) 74 (1982).

In *Goodwin*, the Court reasoned that an initial indictment does not define the extent of the legitimate interest in a prosecution; just as a prosecutor may forego charges in an original indictment to save the time and expense of a trial, a prosecutor may file additional charges if the initial expectation that a defendant would plead guilty to lesser charges proves unfounded. The Supreme Court further stated that an initial decision by the prosecutor should not freeze future conduct, because the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution. The mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insuffi-

cient to warrant a presumption that subsequent charging decisions are unjustified.

The assistant solicitor explained at trial that the four ■ superceding indictments were obtained in response to defendant's motion to quash the original indictment because it lacked specificity as to the time, day, month and year for the crime. In addition, the trial court noted that he recalled the solicitor's office moving for a continuance on defendant's motion to quash the original indictment and that the assistant solicitor stated at that time that the original indictment was too broad and needed to be resubmitted to the grand jury. Furthermore, the original indictment cited as the date "between February 1982-April 1984" and the four superseding indictments cite specific one week periods.

In the absence of a presumption of vindictiveness, the prosecutor submitted sufficient evidence that indicated a reason other than vindictiveness for the procurement of the four indictments. Therefore, the trial judge properly refused defendant's motion to quash.

In regard to defendant's argument that the indict- ■ ments should be quashed because they were procured with the assistant solicitor as the only witness, we conclude that the motion to quash was properly denied under the facts of this case.

This Court has stated that "[t]he practice of using a solicitor or other officer of the state as the sole witness before the grand jury to provide only a summary of the evidence could be abused and we strongly suggest it be abandoned unless no alternative is available." *State v. Capps*, 276 S. C. 59, 275 S. E. (2d) 872 (1981). However, this Court has also stated that this does not necessarily mean that it is error for a solicitor to be the sole witness before the grand jury. *State v. Williams*, 280 S. C. 305, 312 S. E. (2d) 555 (1984).

In this case, the assistant solicitor was the only witness before the grand jury when the four indictments were procured. The facts of this case, however, distinguish it from previous cases. Here, the grand jury was the same grand jury that returned the original indictment in July and was very familiar with the facts of the case because they had previously received extensive testimony from the investigat-

ing officer when the first indictment was returned. Although there was a period of several months between the officer's testimony and the return of the four indictments, the alleged facts of this case were such that they would probably not be easily forgotten. The grand jury heard testimony that in 1982, the defendant, a fellow church member of the victim, befriended Pamela and her family. After establishing a very close and trusting relationship with the family, the defendant began sexually abusing Pamela, then thirteen years old. The defendant would restrain Pamela with leather straps, rape her and force her to perform oral sex. The grand jury also heard testimony wherein it was alleged that the defendant cut Pamela repeatedly with razor blades, burned her with cigarettes and on one incident placed a gun inside her vagina. The defendant would also show Pamela human body parts contained in jars and threaten that if she told anyone about the abuse, he would kill one of her family members. This abuse allegedly continued over a two year period. The fact that the assistant solicitor only appeared before the grand jury for twenty minutes to procure the four indictments further supports the contention that the grand jury remembered the facts of the case.

While we conclude that the motion to quash the indictments was properly denied in this case, we reiterate our holding in *Capps* and caution prosecutors to avoid this practice.

### B. ASSISTANT SOLICITOR'S OPENING STATEMENT

The defendant argues that a mistrial should have been granted because of remarks made during the assistant solicitor's opening argument. Dawkins argues that these remarks constituted a comment to the jury suggesting that he would testify and produce witnesses and evidence in his favor and that the curative instruction was not sufficient. We disagree.

During his opening statement, the assistant solicitor made the following remarks:

"Please listen very closely to all the evidence, every witness the State has and every witness for the defense. .

Once you see the two stories side by side and hear the testimony, you'll be convinced. . . ."

The trial judge *sua sponte* requested a bench conference and then excused the jury. After consideration, the judge determined that although the remarks suggested that Dawkins would put up witnesses, it was not a comment on the defendant's silence or a direct statement that the defendant was going to testify. The trial judge then gave the following curative instruction to the jury:

"Mr. Foreman, ladies and gentlemen of the jury panel, a few moments ago in the solicitor's opening statement, he, as a statement to you, stated that you should listen to the witnesses for the State and the defense, and then compare the two and make your decision. I would instruct you at this time, ladies and gentlemen, that if in any way you construe that—or could have construed that statement to mean that the defendant is under any obligation whatsoever to call witnesses in his behalf, that impression you got was mistaken. Our constitution provides, and always has provided, that a defendant is never required to put up witnesses in a case in any type attempt to prove that the defendant is not guilty. The burden is always on the State to prove guilt beyond a reasonable doubt; and there is no requirement for a defendant to call any witnesses of any type. So, I wanted to disabuse your mind if you did gain that impression from the solicitor's remarks."

Whether to grant or deny a motion for mistrial is within the discretion of the trial judge and such ruling will not be overturned in the absence of abuse thereof amounting to an error of law. *State v. Arnold,* 266 S. C. 153, 221 S. E. (2d) 867 (1976); *State v. Craig,* 267 S. C. 262, 227 S. E. (2d) 306 (1976). In addition, "an instruction to disregard incompetent evidence usually is deemed to have cured the error in its admission. . . . A mistrial should not be ordered in every case where incompetent evidence is received and later stricken out."

Here, the trial judge determined that the remarks merely suggested that Dawkins would put up witnesses rather than insinuate that Dawkins would testify. In accordance with

this determination, the judge instructed the jury that the defendant is never required to produce witnesses and that the burden is on the state to prove guilt beyond a reasonable doubt. We conclude that this curative instruction was fully sufficient under the circumstances and that the trial judge did not abuse his discretion in denying the mistrial. We also note that no prejudice was suffered by Dawkins considering the fact that twenty-five witnesses, including Mr. Dawkins, appeared on behalf of the defense.

## C. PSYCHIATRIST'S OPINION

Before trial, Dawkins filed a motion *in limine* to prevent any testimony by one witness as to their opinion about the credibility of another witness. The trial judge did not specifically rule on this issue at that time, but he did state that he "didn't know of any provision that allows one witness to give their opinion relative to the credibility of another opinion by another witness."

During the testimony of Dr. Banks, a psychiatrist who had treated Pamela, the solicitor posed the following question—"Based on your examination and your observations of Pamela, are you of the impression that her symptoms are genuine?", to which the doctor answered, "yes." The judge sustained an objection. Dawkins moved for a mistrial. Instead of ruling on the motion, the judge gave the following instruction to the jury:

> "Ladies and gentlemen of the jury panel, people can't come in and give their opinions as to what they feel took place. That's not appropriate. The only thing that witnesses can do is to come in and tell you what they've seen and what they've observed. It's solely left up to you, ladies and gentlemen, to make a determination as to the facts in this case. So, you would please disregard the last statement made by this witness. That's an encroachment on your province to decide this case based on what you've seen and heard, free from anyone else's opinions."

The judge then denied the motion for mistrial on the grounds that the curative instruction cured any prejudice which may have resulted because of the statement.

Using the general principles discussed above, to-wit, that it is within the discretion of the trial judge to grant or deny a mistrial and that curative instructions usually cure any prejudice caused by the admission of incompetent evidence, we conclude that the judge did not abuse his discretion in denying the mistrial. Although it was improper for the prosecutor to pose this question, it was not of such magnitude to effect the outcome of the trial. Therefore, we find that the curative instruction was sufficient under the circumstances.

### D. CLOSING ARGUMENT

During the solicitor's closing argument, he had Pamela approach the jury box. The judge sustained an objection and stated that the solicitor should not have any witnesses approach the jury. The motion for a mistrial was denied. Dawkins contends that this act was so prejudicial that it constituted reversible error. We disagree.

The decision to grant or deny a mistrial is within the discretion of the trial judge. Likewise, the conduct of the trial is largely left to the sound discretion of the trial judge. The decision of the trial court will not be disturbed absent an abuse of discretion which results in prejudice to the defendant. *State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981); *State v. Groome,* 274 S. C. 189, 262 S. E. (2d) 31 (1980). As noted by the judge, it is improper to have witnesses approach the jury. However, the judge determined that in this case the prejudicial effect was minimal when Pamela was only before the jury for a moment. We conclude that the judge did not abuse his discretion in denying the mistrial.

Affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.