23481

STATE of South Carolina, Respondent v. Noah Ryan ROBINSON, Appellant.

(409 S.E. (2d) 404)

Supreme Court

470

*Russell D. Ghent* and *Albert Q. Taylor,* Spartanburg, and
*Howard W. Pat Paschal,* Greenville, *for appellant.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia; and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

Heard April 21, 1991; Decided Sept. 23, 1991.

Rehearing Denied Oct. 22, 1991.

GREGORY, Chief Justice:

Appellant was convicted of accessory to felony after the fact and sentenced to ten years imprisonment. We affirm.

Appellant was indicted for criminal conspiracy and murder for the killing of Hambone Barber; he was also indicted for criminal conspiracy and accessory to felony before and after the fact for the stabbing of Janice Denise Rosemond. The Solicitor sought the death penalty for the Barber murder. These charges were tried together.

At trial, the State produced evidence appellant solicited the murder of Hambone Barber committed by members of the El Rukns, a Chicago organization. Barber was gunned down outside a bar in Greenville. A witness to the shooting, Janice Denise Rosemond, identified a member of the El Rukns as the killer and testified to this effect before a federal grand jury in Chicago. Soon thereafter, Rosemond was severely stabbed in her home by an acquaintance, Fred Sweeney. Sweeney testified appellant wanted him to kill Rosemond because "she spilled on one of his guys." Appellant offered Sweeney $5,000 to slit Rosemond's throat. Rosemond, however, survived Sweeney's attack. At Sweeney's request, appellant agreed to send him money to flee in Florida. Sweeney received payments of $500 and $200 through appellant's associate, Jake Oliver. The jury found appellant guilty of accessory to felony after the fact and reached no verdict on all other counts.

Appellant contends the trial judge erred in refusing his motion for a change of venue based on pretrial publicity. Appellant, Jesse Jackson's half-brother, is a well-known member of the black community. He claims the unavoidable notoriety of this case was aggravated by the trial judge's publicized order of stringent court security and the Solicitor's conduct. He claims the Solicitor made inflammatory remarks to the media and also filed a pretrial memorandum with the court, accessible to the press, detailing the evidence in aggravation of murder.

When a trial judge bases the denial of a motion for change of venue because of pretrial publicity upon an adequate voir dire examination of the jurors, his decision will not be disturbed absent extraordinary circumstances. *State v. Caldwell*, 300 S.C. 494, 388 S.E. (2d) 816 (1990); *State v. Owens*, 293 S.C. 161, 359 S.E. (2d) 275 (1987). Mere exposure to pretrial publicity does not automatically disqualify a prospective juror; the defendant must show actual juror prejudice. *State v. Caldwell, supra.* When jurors are exposed to such publicity, there is no error in refusing a change of venue where jurors are found to have the ability to lay aside any impressions or opinions and render a verdict based on the evidence presented. *Id.*

Upon appellant's initial motion, the trial judge questioned the jury panel regarding impartiality and specifically asked if any juror was influenced by hearing information about the case. When only three potential jurors responded, the trial judge denied the motion for change of venue ruling that he would reconsider it after voir dire. On voir dire, the few jurors who acknowledged hearing any news accounts of the case all stated under oath they could put the information aside and give both the State and appellant a fair and impartial trial. After voir dire, the trial judge again denied appellant's motion for a change of venue.

We find no abuse of discretion in the denial of a change of venue. Appellant has failed to show any actual prejudice from the pretrial publicity in this case and we find no extraordinary circumstances to warrant disturbing the trial judge's decision.

Next, appellant contends the Solicitor exercised his peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). Of the five strikes allowed the Solicitor against regular jurors, he exercised only one and it was used against a black juror, Phyllis Shell. He also used his one strike allowed on the first alternate against a black juror, John Leaks. One black juror sat on the jury; the remaining jurors, including the two alternates, were white.

The Solicitor stated he struck Juror Shell because of "general instability." She had changed employment several times after relatively short periods of employment, she was an unmarried mother of a two-year-old, and she was still living at

her parent's home. Further, she admitted on voir dire that she had seen Reverend Fleming, an outspoken advocate of appellant, discussing appellant's case on television.

After the Solicitor stated his reasons for striking Juror Shell, counsel argued the merits of the motion and the trial judge ruled there had been no *Batson* violation. On appeal, appellant complains the Solicitor's reasons for striking Juror Shell were pretextual and that he stated no reason for striking Juror Leaks, the potential alternate juror.

We find the Solicitor's reasons for striking Juror Shell are racially neutral. Further, the burden is on the defendant to prove that the Solicitor's neutral reasons for his strikes were pretextual because they were not applied in a neutral manner. *State v. Johnson*, — S.C. —, 395 S.E. (2d) 167 (1990). Here, appellant raised no issue to the trial judge regarding any alleged pretext and this issue is not preserved on appeal. *State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989); *State v. Caldwell*, 283 S.C. 350, 322 S.E. (2d) 662 (1984). In any event, based on the record, we find appellant's claims of pretext to be without support. As to the striking of Juror Leaks, the potential alternate for whom no explanation was given, appellant waived any error in the Solicitor's lack of explanation by failing to raise it below. *See State v. Martinez*, 294 S.C. 72, 362 S.E. (2d) 641 (1987).

At the close of presentation of the defense case, appellant's counsel moved for a mistrial on the ground that on voir dire examination a juror had not revealed she knew the Solicitor. The Solicitor denied he knew the juror. He stated he had coached her son in swimming fifteen years earlier.

In *State v. Gulledge*, 277 S.C. 368, 287 S.E. (2d) 488 (1982), this Court found the trial judge abused his discretion in denying a mistrial where a juror failed to disclose on voir dire that she was related by marriage to a deputy sheriff who viewed the crime scene and had custody of the defendant in the courtroom during trial. The Court held that absent any justification for the juror's failure to disclose her relationship to the deputy sheriff, a mistrial should have been granted. This case, however, is distinguishable on its facts. The Solicitor denied knowing the juror and the only contact between the juror and the Solicitor, if any, was fifteen years before appellant's trial.

We find no abuse of discretion in the denial of a mistrial on this ground.

During the Solicitor's direct examination of Henry Harris, an El Rukn gang member allegedly involved in the Barber murder, Harris testified that in the 1980's he was in charge of drug operations for the organization. He was subsequently asked when he first became acquainted with appellant and he answered " '83 or '84." Appellant then objected and moved for a mistrial on the ground Harris' testimony linked appellant to drug dealing.

This argument is without merit. First, in context, Harris' testimony does not imply appellant was involved in drug dealing merely because he knew appellant during the time Harris was dealing drugs. Harris testified the El Rukns rented a building from appellant where their restaurant was located; there is no testimony linking appellant to the El Rukn's drug dealing activities.

Further, appellant was the first to bring out the El Rukn's involvement in drug dealing. A previous witness, gang member Eugene Hunter, testified appellant was a friend of Jeff Fort, the head of the El Rukns, and was assisting the El Rukns in establishing a legitimate business. On cross-examination, appellant elicited testimony from Hunter that the El Rukns were involved in drug dealing. Since appellant opened the door to this evidence, he cannot complain of prejudice from its admission. *State v. Sullivan,* 277 S.C. 35, 282 S.E. (2d) 838 (1981).

Appellant further contends he should have been granted a mistrial on the ground of prosecutorial misconduct. Rosemond, the stabbing victim, testified for appellant. Essentially, she denied ever having identified Barber's killer to police; she stated Detective Brannigan literally twisted her wrist to force her to testify before a federal grand jury in Chicago regarding this case. She further testified to her close relationship with appellant: "I look at him as my godfather." .

On cross-examination, the Solicitor asked Rosemond if she had written appellant a letter after she was stabbed, which she admitted. The Solicitor asked her to read a line from it: "Take care of my godfather." Appellant then moved for a mistrial claiming prosecutorial misconduct because the letter was evidence that had been suppressed under a prior ruling by the trial judge. The trial judge ruled the letter had not been sup-

pressed under his prior ruling and therefore the Solicitor was not guilty of prosecutorial misconduct in using it to cross-examine Rosemond.

The record indicates that at the suppression hearing appellant sought the suppression of evidence seized pursuant to search warrants for two different addresses, one for his apartment and one for his office. The following colloquy occurred between counsel and the trial judge:

> MR. SIMONE: I just want to know, Judge, some things from the prosecutor. It won't be necessary for me to ask [the witness] any more questions. Is there any material seized that was taken from a room other than Noah Robinson's room? Do you expect that you want to try to introduce those?
> THE COURT: That's a legitimate question.
> MR. WATSON: Not that I intend to introduce. There was other stuff seized from other rooms.
> MR. SIMONE: But you don't intend to introduce it.
> MR. WATSON: That's right.

Appellant then argued the evidence at issue should be suppressed because the supporting affidavit, identical for both search warrants, contained information gathered by an illegal surveillance. In addition, he argued the evidence from appellant's bedroom should be suppressed because police officers forced the bedroom door in arresting appellant's roommate, Jake Oliver. The trial judge ruled this conduct went beyond the scope of a search pursuant to arrest. Though a search warrant was subsequently obtained, the trial judge concluded the evidence seized from the bedroom should be suppressed. He further ruled that the affidavit was valid.

Appellant claims the Solicitor misled him by stating the only evidence he sought to introduce was taken from appellant's bedroom. In context, however, the above quoted colloquy indicates the discussion was regarding evidence sought to be introduced from appellant's *apartment*. The Solicitor produced evidence the letter was in fact seized from appellant's office. The trial judge's ruling that the affidavit was valid governed the suppression of evidence taken from appellant's office since the affidavit was the only ground upon which the admission of this evidence was challenged.

We conclude the record of the suppression hearing supports the trial judge's ruling on the motion for mistrial that the letter used by the Solicitor in cross-examining Rosemond was not evidence that was suppressed under his prior ruling. Since there was no ruling suppressing evidence from appellant's office, the Solicitor was not guilty of misconduct in using this letter. Moreover, we find no prejudice to appellant from the Solicitor's reference to the letter since Rosemond testified to the same effect on direct examination regarding her relationship with appellant.

The final issue we address regards appellant's pretrial discovery request for statements of all prosecution witnesses and police investigative reports. The trial judge ruled that pursuant to Rule 5(a)(2), SCRCrimP, investigative reports are not discoverable and witness statements must be provided only after a witness has testified. Appellant contends that this evidence should have been allowed for discovery under the Freedom of Information Act (FOIA). We disagree.

S.C. Code Ann. § 30-4-40(a)(3) (1991) provides that records of law enforcement agencies are exempt from the FOIA "if disclosure of the information would harm the agency by . . . (B) the premature release of information to be used in a prospective law enforcement action."

In construing the federal FOIA, the United States Supreme Court has held that the FOIA does not supplement or displace the applicable rules of discovery. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 110 S. Ct. 471, 107 L. Ed. (2d) 462 (1989); *National Labor Relations Board v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 98 S. Ct. 2311, 57 L. Ed. (2d) 159 (1978). An exemption to disclosure based on "interference with enforcement proceedings" has been construed to exempt disclosure of any information that would give a party litigant greater access to the government's opposing case. *Robbins Tire, supra.* The government need not prove the need for nondisclosure on a case-by-case basis. *Id.*

Similarly, we conclude the South Carolina FOIA exempts discovery of material that is not otherwise discoverable under Rule 5(a)(2). The specific exemption under § 30-4-40(a)(3)(B) for "the premature release of information to be used in a prospective law enforcement action" clearly exempts information regarding pending criminal pros-

ecutions. No specific showing of harm is required by the State if the request involves such material.

Appellant's issues 7, 8, and 9 involve evidentiary rulings relating to testimony relevant only to the murder charges. Appellant was not convicted of these offenses and we need not address these issues. *See State v. Sherard*, — S.C. —, 399 S.E. (2d) 595 (1991) (verdict will not be reversed for insubstantial errors not affecting the result of the trial). Appellant's remaining issues are disposed of pursuant to Supreme Court Rule 23 and the following authority. Issue 2: *State v. Green*, 301 S.C. 347, 392 S.E. (2d) 157 (1990) (challenges for cause will not be reviewed if peremptory strikes not exhausted); Issue 10: *State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989) (no objection); Issue 12: *State v. Alexander*, — S.C. —, 401 S.E. (2d) 146 (1991) (no prejudice from inconsistent verdicts); Issue 13: *State v. Sullivan*, 277 S.C. 35, 282 S.E. (2d) 838 (1981) (sentence within statutory maximum).

The judgment of the circuit court is

Affirmed.

HARWELL, CHANDLER and TOAL, JJ., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice (dissenting):

I respectfully dissent. In my view, the solicitor's conduct contributed materially to pretrial publicity and exacerbated prejudice to the appellant. Additionally, I would find that the solicitor failed to articulate a racially neutral reason for striking a black prospective juror, in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. (2d) 69 (1986). I would reverse and remand for a new trial.

First, the problem of pretrial publicity was compounded by dissemination of a memorandum filed by the solicitor.[1] Counsel for appellant sought and obtained an agreement to prevent publicity surrounding the Notice of Evidence in Aggravation which would be served less than a week before jury selection and almost four months after the state announced its intention

---

[1] The solicitor acknowledged that the publicity surrounding this case was unprecedented.

to seek the death penalty. The state agreed to provide the Notice to appellant's counsel, who would acknowledge receipt, and the Notice would not be filed. On January 10, 1989, the solicitor filed a memorandum with the Clerk of Court, which stated in part:

> On Monday, I discussed with Pat Paschal certain evidence I intend to present in the penalty phase of Mr. Robinson's trial. Because the evidence to be offered includes evidence of extensive criminal conduct, including other murder-for-hires, Pat requested that I either not file the Notice of Evidence in Aggravation or that, if filed, I not detail the evidence to be offered . . .

The memorandum was picked up by the press in routine checks of courthouse records and extensively publicized through the news media.

The solicitor was not mandated by law to file the Notice of Evidence in Aggravation with the court. The state is only required to furnish written notice of evidence in aggravation to an accused prior to trial. *See* S.C. Code Ann. § 16-3-20(B) (1976). Also noteworthy is the fact that the state did not file all other non-compulsory trial-related memoranda. When viewed in totality and under the unique circumstances of this case, it is clear from the record that filing of the memorandum was contrived to fuel publicity and further prejudice the accused.

Additionally, the news media reported statements by the solicitor which were, in my view, inflammatory. In comments concerning his plea bargain with appellant's co-defendants, the solicitor stated, "it takes a crook to catch a crook." He also indicated the timing of the arrest was due to "beatings," "stabbings" and "dead bodies" attributable to the appellant.

In my opinion, this record is an egregious example of a prosecutor striving to obtain a conviction regardless of the costs. The solicitor's conduct aggravated notoriety surrounding this case with the resulting effect that prospective jurors formed opinions based upon news accounts. One venireperson stated that he had formed the opinion that appellant was guilty based upon what he had read in newspapers.

In *State v. Dawkins*, 297 S.C. 386, 377 S.E. (2d) 298 (1989) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629,

633, 79 L. Ed. 1314 (1935)), this Court reiterated the following cautionary note to prosecutors:

> ... He [the prosecutor] may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much is duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*State v. Dawkins,* 377 S.E. (2d) at 299.

I would hold that the solicitor's conduct contributed substantially to circumstances of inherent or presumptive prejudice and created actual prejudice which deprived the appellant of the right to a fair and impartial trial.

Next, I would reverse on the ground that the solicitor violated *Batson v. Kentucky, supra.* The state exercised peremptory strikes against one black venireperson presented as a prospective juror, one black venireperson presented as an alternate and seated one black juror. In a *Batson* hearing, the solicitor stated that he struck the black prospective juror because of instability due to an erratic work history and parenting a child out of wedlock.

While an erratic work history may be a neutral reason, I find nothing in this record which indicates periods of unemployment or that the prospective juror was an undependable employee. When asked about her employment history, the prospective juror stated that she had been on her present job for four months, had worked for her preceding employer for a year, and had been on her prior job for a year and a half.

As to his second reason, I am unable to determine from the record before this Court how the circumstances of the birth of the prospective juror's child bears any relationship to the particular case to be tried. Moreover, the United States Supreme Court has held generally that illegitimacy may not be used as a basis for unjustified discrimination. *See Reed v. Campbell,* 476 U.S. 852, 106 S. Ct. 2234, 90 L. Ed. (2d) 858 (1986).

A prosecutor is required to articulate a racially neutral explanation related to the particular case to be tried. Such explanation must be a neutral, clear and reasonably specific explanation of a legitimate reason for exercising the challenges. *Batson,* 106 S. Ct. at 1724.

In my view, the solicitor's articulated reason for striking the black prospective juror was neither racially neutral nor related to the particular case to be tried.

I would reverse the case and remand for a new trial.