556 S.E.2d 380

**Ray T. MAYO, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 25382.**

Supreme Court of South Carolina.

Submitted Oct. 24, 2001.

Decided Dec. 3, 2001.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General David A. Spencer, all of Columbia, for petitioner.

Assistant Appellate Defender Aileen P. Clare, of S.C. Office of Appellate Defense, of Columbia, for respondent.

Justice MOORE:

Respondent Mayo was convicted of assault with intent to commit third degree criminal sexual conduct and sentenced to ten years. After his direct appeal was dismissed, Mayo filed this action for post-conviction relief (PCR) claiming ineffective assistance of trial counsel. Relief was granted. We reverse.

## FACTS

At trial, the twenty-three-year-old victim (Victim) testified she was living in a transitional home for women [1] and was unemployed when she answered a newspaper ad placed by Mayo: "If you're homeless and need a job, maybe I can help, 776–7717." Mayo arranged for his employee, Bill, to pick Victim up and bring her to Mayo's trailer park for an inter-

---

1. Victim had recently been released from a mental health institution.

view. Bill dropped Victim off at Mayo's trailer and went next door.

Mayo's teen-aged son was present when Victim arrived but he left shortly thereafter. Victim testified that when they were alone, Mayo began kissing her. He forcefully pulled her shirt up around her neck, pulled her brassiere down, and groped her breasts. He also put his hand down into her pantyhose and grabbed her genital area, tearing her hose. Victim was frightened and thought Mayo was going to rape her. She finally pushed him off her and ran next door to ask Bill to drive her home.

Witnesses from the home where Victim lived testified she was disheveled when she returned from the interview and subsequently became very upset. After calling the rape crisis center, they took Victim to the hospital.

Mayo testified he was never alone with Victim and that he did nothing more than put his arm around her shoulder when she was getting ready to leave. Both Mayo's son and Bill testified they were at Mayo's trailer during Victim's interview. Mayo's son stated Victim and Mayo were never out of sight and no assault occurred. He saw Mayo put his arm around Victim and explained that Mayo "puts his arm around everybody."

## ISSUES

1. Was counsel ineffective for failing to object to improper bad act evidence?

2. Was Mayo prejudiced by counsel's failure to impeach Victim?

## DISCUSSION

### 1. *Cross-examination*

Before Mayo took the stand, counsel made a motion *in limine* to exclude evidence of prior bad acts. No specific acts were discussed. The trial judge ruled generally that pursuant to *State v. Major*, 301 S.C. 181, 391 S.E.2d 235 (1990), Mayo could be asked about prior bad acts not subject to conviction

that affected his credibility but any denial could not be contradicted.[2]

On direct, Mayo testified he put his arm around Victim but denied he assaulted her. On cross-examination, he again stated he put his arm around Victim's shoulder and that he did this with a lot of women. The solicitor then questioned Mayo as follows:

Q: And it's your testimony today that you put your arm around lots of women?

A: A lot of women I do. As a matter of fact, there's a lady out at the hair salon I go to and stuff like that, they awful nice to me.

Q: And you're awful nice back to them, too, aren't you?

A: Well—

Q: **And back in 1989 you were awful nice to Ms. Annette Causey, too, weren't you?**

A: What you mean? I was dating her mother.

Q: You were dating her mother?

A: Right.

Q: And you were awful nice to her daughter as well, were you not, according to your testimony, awful nice meaning touching them in a friendly way?

A: **I was not convicted of that.**

At the end of cross-examination, Mayo reiterated that he did not assault Victim. The solicitor then asked:

Q: **Just like you weren't convicted for that one back in 1989 with Annette Causey?**

A: I was not convicted.

The PCR judge found counsel was ineffective for failing to object to the solicitor's last question because it was "improper as either suggesting a conviction despite Mayo's denial ... or commenting on prior bad acts denied by Mayo."

In our view, the PCR judge's ruling does not take into account the fact that Mayo *volunteered* the information that he had no conviction involving Annette Causey. Contrary to

---

2. Mayo was tried in 1994 before enactment of the South Carolina Rules of Evidence.

the PCR judge's ruling, the solicitor did nothing to suggest a conviction. Nor did Mayo ever deny any bad act that the solicitor then improperly commented on—Mayo simply denied he had been convicted. Since Mayo himself injected the issue of a conviction, there was no sustainable objection counsel could have made. *See State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (one who opens the door to evidence cannot complain of its admission).

There is no evidence to support the PCR judge's ruling that counsel was ineffective.[3] Accordingly, we reverse the grant of PCR on this ground. *See Bannister v. State*, 333 S.C. 298, 509 S.E.2d 807 (1998) (PCR judge's ruling will be reversed if not supported by any evidence).

### 2. Impeachment of Victim

The arrest warrant affidavit included an allegation that Mayo pushed Victim into a wall during the assault. Victim did not mention this fact during direct examination. On cross-examination, counsel impeached Victim with several details in her pre-trial statement to police that were inconsistent with her testimony at trial but did not question her about the allegation that Mayo had pushed her into a wall. At the PCR hearing, counsel was not asked whether he intentionally omitted this question as a matter of strategy. The PCR judge found counsel was ineffective for failing to impeach Victim with this detail from her affidavit and concluded Mayo was prejudiced.

Even if we were to agree counsel was ineffective, we find the failure to ask Victim whether Mayo had pushed her into a wall could not have been prejudicial. *See Edmond v. State*, 341 S.C. 340, 534 S.E.2d 682 (2000) (PCR applicant must show both error and prejudice). This fact would only have injected an element of violence that was not otherwise introduced. Based on the record, we conclude there is no reasonable probability that the result at trial would have been different

---

**3.** Counsel testified at the PCR hearing: "[T]he thing that hurt the most was [Mayo] just volunteered that information about, 'I was never convicted.' I almost fell through the table when he said it. Because he didn't need to say it and it would have never gone as far as it did. But of course [the solicitor] just jumped on it the minute he said it and the cat was out of the bag and we were off and running."

had counsel brought out this fact. *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997) (to prove prejudice, applicant must show there is a reasonable probability the result at trial would have been different).

Since Mayo cannot show prejudice from counsel's failure to impeach Victim with this single detail, the PCR judge's ruling is without evidentiary support. Accordingly, the grant of PCR on this ground is reversed. *See Bannister v. State, supra.*

**REVERSED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.