611 S.E.2d 496

**EVENING POST PUBLISHING CO., d/b/a The Post and Courier, and Ms. Parthinea Snowden, as Personal Representative of the Estate of Edward Snowden, Deceased, Plaintiffs,**

**Of which Evening Post Publishing Co., d/b/a The Post and Courier, is Petitioner,**

v.

**CITY OF NORTH CHARLESTON, Respondent.**

No. 25962.

Supreme Court of South Carolina.

Heard March 2, 2005.

Decided April 4, 2005.

John J. Kerr, of Buist, Moore, Smythe & McGee, of Charleston, for Petitioner.

J. Brady Hair, Derk Van Raalte, and Richard Lingenfelter, all of North Charleston, for Respondent.

Justice PLEICONES.

This is a Freedom of Information Act (FOIA)[1] case. We granted a writ of certiorari to review *Evening Post Publishing Company v. City of North Charleston*, 357 S.C. 59, 591 S.E.2d 39 (Ct.App.2003), in which the Court of Appeals affirmed the circuit court's decision that Respondent City of North Charleston (the City) properly denied the FOIA request of Petitioner Evening Post Publishing Company (the Post). We reverse and remand to the circuit court.

## FACTS

Four Caucasian men attacked an African–American man (the victim) in front of a store, and the store owner called 911. When police officers arrived, the victim was inside the store and holding a gun. The officers shot and killed him.

The four attackers were arrested and charged with lynching. The police officers were not charged with a crime.

---

1. S.C.Code Ann. §§ *30–4–10* through *30–4–165* (1991 & Supp.2004).

The 911 tape contains the store owner's description of the attack to the dispatcher. The tape also contains conversations between the dispatcher and police officers about the incident.

Several months prior to the lynching trial, the Post filed with the City a FOIA request for a copy of the tape. The Solicitor of the Ninth Judicial Circuit was consulted by the City and opined that the tape would be evidence in the upcoming lynching trial. Consequently, the Solicitor suggested, the tape was exempt from disclosure pursuant to South Carolina Code section 30–4–40(a)(3)(B).[2] In respect of the Solicitor's assessment, the City denied the Post's request.

■ The Post then filed a complaint for declaratory judgment and injunction to compel release of the tape. The circuit court held that under section 30–4–40(a)(3)(B), the tape was exempt from disclosure until the lynching trial concluded.[3] The Post appealed, and the Court of Appeals affirmed.[4]

## ISSUE

Whether the 911 tape was exempt from disclosure pursuant to South Carolina Code section 30–4–40(a)(3)(B).

## ANALYSIS

■ Under FOIA, "[a]ny person has a right to inspect or copy any public record of a public body," unless that record is

---

2. S.C.Code Ann. § 30–4–40(a)(3)(B) (1991). Although not pertinent here, subsection 30–4–40(a)(3) was amended in 2002. 2002 Act No. 350, § 1 (effective July 19, 2002); *see also* S.C.Code Ann. § 30–4–40(a)(3) (Supp.2004).

3. The victim's estate intervened in the action and also sought production of the tape in its civil suit against the City. The estate received a copy pursuant to the South Carolina Rules of Civil Procedure but was ordered to not publicize the tape until the lynching trial ended. Earlier, the lynching defendants had received copies of the tape pursuant to the South Carolina Rules of Criminal Procedure.

4. After the tape was played in open court at the lynching trial, the Post published a transcript. We agree with the Court of Appeals that the case is not moot, because "the facts presented here are capable of repetition yet evading review." *Evening Post Pub. Co.*, 357 S.C. at 62, 591 S.E.2d at 41.

exempt from disclosure. S.C.Code Ann. 30–4–30(a) (1991).[5] Whether a record is exempt depends on the particular facts of the case. *City of Columbia v. ACLU,* 323 S.C. 384, 387, 475 S.E.2d 747, 749 (1996). Underlying each case, however, is the principle that the exemptions in section 30–4–40 are to be narrowly construed so as to fulfill the purpose of FOIA ... "to guarantee the public reasonable access to certain activities of the government." *Fowler v. Beasley,* 322 S.C. 463, 468, 472 S.E.2d 630, 633 (1996); S.C.Code Ann. 30–4–15 (1991); *Quality Towing, Inc. v. City of Myrtle Beach,* 345 S.C. 156, 161, 547 S.E.2d 862, 864–65 (2001). To further advance this purpose, the government has the burden of proving that an exemption applies.

Here, the City invoked section 30–4–40(a)(3)(B), which exempts from disclosure

> [r]ecords of law enforcement and public safety agencies not otherwise available by law that were compiled in the process of detecting and investigating crime if the disclosure of the information would harm the agency by ... [t]he premature release of information to be used in a prospective law enforcement action.

S.C.Code Ann. § 30–4–40(a)(3)(B) (1991).

All of the elements of this exemption are present except "harm the agency."

The City argues that pre-trial release of the tape would have led to substantial pre-trial publicity, which likely would have tainted the entire jury pool, causing the venue of the trial to be changed. According to the City, the harm would have been that the Solicitor's Office could not have afforded the financial cost of a change of venue.

At the outset, we note that the harm claimed by the City would actually have been harm to the Solicitor's Office. We agree with the City that with respect to the lynching prosecution, harm to the Solicitor's Office would have constituted

---

5. That a record is exempt does not mean that the government has a duty of non-disclosure. Rather, an exemption provides the government with discretion to either withhold the record or release it. *S.C. Tax Commn. v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 169, 447 S.E.2d 843, 846–47 (1994); *Bellamy v. Brown,* 305 S.C. 291, 295, 408 S.E.2d 219, 221 (1991).

harm to the City. The City and the Solicitor's Office have a shared interest in the prosecution of persons charged with committing crimes in the City.

 The financial cost of a venue change, however, is not the type of harm that section 30–4–40(a)(3)(B) is intended to prevent.[6] Rather, it is intended to prevent harms such as those caused by release of a crime suspect's name before arrest, the location of an upcoming sting operation, and other sensitive law-enforcement information. We do not close the door to pre-trial publicity ever factoring into a decision whether this exemption applies. We hold only that the financial burden of a potential change in venue did not justify withholding the 911 tape.[7]

 The Court of Appeals erred by holding that harm is irrefutably presumed when the subject of the FOIA request

---

**6.** The City and the Solicitor were not actually seeking to protect the defendants' rights to fair trials, and the defendants did not intervene in attempt to protect themselves. Thus, the issue whether this FOIA exemption would have been a proper mechanism by which to protect the defendants is not before the Court. We do note that in the past we have addressed pre-trial publicity's threat to a fair trial in other contexts. *See, e.g., Ex parte The Island Packet*, 308 S.C. 198, 201–02, 417 S.E.2d 575, 577–78 (1992) (explaining the test for the closure of a court proceeding); *Ex parte First Charleston Corp.*, 329 S.C. 31, 34–35, 495 S.E.2d 423, 424–25 (1998) (in another closed-proceeding case, observing that even in highly publicized cases, *voir dire* is usually sufficient to ensure a fair trial); *State–Record Co. v. State*, 332 S.C. 346, 350–59, 504 S.E.2d 592, 594–99 (1998) (upholding a temporary restraining order (TRO) that prevented the media from publishing the contents of a videotape prior to trial).

**7.** At the circuit court, the prosecutor in charge of the lynching trial testified that another harm would have occurred. He asserted that allowing the City to release the tape prior to trial would have caused him to lose his license to practice law, for he would have thereby violated Rules 3.6 and 3.8(e) of the South Carolina Rules of Professional Conduct, which generally prohibit a prosecutor from creating pre-trial publicity. Rules 3.6 and 3.8(e), RPC, Rule 407, SCACR. We appreciate the prosecutor's desire to act professionally, but the Rules of Professional Conduct did not affect whether the 911 tape was exempt from disclosure under FOIA. Disclosure under FOIA is the obligation of the government. Professionalism is the personal obligation of a government attorney. *See Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 799–800, 461 S.E.2d 850, 861–62 (W.Va.1995) (distinguishing between the state attorney general's professional obligations and the state's FOIA obligations).

will be evidence in a prospective criminal trial. We reject this categorical rule in favor of the usual case-by-case approach. The City was required to prove particular harm.

The Court of Appeals based its holding in part on *State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992), in which we did adopt a narrow *per se* rule. We held that section 30–4–40(a)(3)(B) "exempts discovery of material that is not otherwise discoverable under Rule 5(a)(3)" of the South Carolina Rules of Criminal Procedure. "No specific showing of harm is required by the State if the [FOIA] request involves such material." *Robinson*, 305 S.C. at 476–77, 409 S.E.2d at 409. In other words, a criminal defendant's obtaining more information through FOIA than that to which he is entitled through discovery presumptively "harms the agency."

The Court of Appeals misapprehended that *Robinson* merely reflects the widely accepted principle that FOIA is not to be used by those under criminal charges to circumvent the limitations of discovery. *See, e.g., State ex rel. Wyant v. Brotherton*, 214 W.Va. 434, 438–39, 589 S.E.2d 812, 816–17 (W.Va.2003); *Henderson v. State*, 745 So.2d 319 (Fla.1999). That principle is not implicated here, because the 911 tape was available through both criminal and civil discovery. Indeed, the lynching defendants received copies of the tape through criminal discovery, and the victim's estate received a copy through civil discovery. *See, supra*, note 3.

In addition, the Court of Appeals misinterpreted *Turner v. North Charleston Police Department*, 290 S.C. 511, 351 S.E.2d 583 (Ct.App.1986), in which the Court of Appeals upheld the denial of a FOIA request pursuant to section 30–4–40(a)(3)(B). In the case *sub judice*, the Court of Appeals held that *Turner* stands for the rule that evidence in a forthcoming criminal trial is categorically exempt from disclosure under FOIA. *Evening Post Pub. Co.*, 357 S.C. at 63–64, 591 S.E.2d at 41. Yet, the result in *Turner* was reached because of a threat of particular harm,[8] not because of any *per se* rule. Like *Robin-*

---

8. The 911 tape at issue in *Turner* "included calls from regular informants as well as Crimestopper calls from citizens." 290 S.C. at 513, 351 S.E.2d at 584. The sensitive nature of that information was the basis for applying section 30–4–40(a)(3)(B), though we note that anoth-

*son,* therefore, *Turner* does not support the decision of the Court of Appeals.

As we have explained, the City was not entitled to a presumption that it would be harmed by disclosure of the 911 tape's contents. The City was required to prove that it would suffer particular harm, and the City did not meet its burden. The City's non-disclosure therefore violated FOIA.

## CONCLUSION

The City's denial of the Post's request for a copy of the 911 tape violated FOIA. The tape was not exempt from disclosure pursuant to South Carolina Code section 30-4-40(a)(3)(B). The Court of Appeals' decision is reversed, and the case is remanded to the circuit court for a determination whether any further relief should be granted.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

er exemption specifically addresses "[d]isclosing the identity of informants not otherwise known." S.C.Code Ann. § 30-4-40(a)(3)(A) (1991).