Matter of New York Civ. Liberties Union v New York City Police Dept. (2018 NY Slip Op 08423)

Matter of New York Civ. Liberties Union v New York City Police Dept.

2018 NY Slip Op 08423 [32 NY3d 556]

December 11, 2018

Garcia, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 20, 2019

[*1]

In the Matter of New York Civil Liberties Union, Appellant,
v
New York City Police Department et al., Respondents.

Argued November 14, 2018; decided December 11, 2018

Matter of New York Civ. Liberties Union v New York City Police Dept., 148 AD3d 642, affirmed.

{**32 NY3d at 560} OPINION OF THE COURT

Garcia, J.

Civil Rights Law § 50-a requires that police officer personnel records be kept confidential, and sets out a procedure to obtain a court order of disclosure. Petitioner, the New York Civil Liberties Union (NYCLU), seeks disclosure of protected personnel records from the New York City Police Department (NYPD) pursuant to the Freedom of Information Law (FOIL), contending that compliance with Civil Rights Law § 50-a is unnecessary where an officer's identifying information is adequately redacted. We disagree, and hold that the requested personnel records are exempt from disclosure pursuant to Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a.
I.
The parties' FOIL dispute concerns documents generated in connection with NYPD disciplinary proceedings that arise out of allegations referred to the NYPD by the New York City Civilian Complaint Review Board (CCRB).

A.
The CCRB was created in 1992 as an independent City agency empowered to receive and investigate allegations of police{**32 NY3d at 561} misconduct against NYPD officers. Among other things, the CCRB investigates civilian complaints and submits its findings and recommendations to the NYPD Commissioner (see NY City Charter § 440 [c] [1]). If the CCRB "substantiates" a complaint against an officer, it may refer the case to the NYPD for formal disciplinary action.
If the NYPD chooses to prosecute, the subject officer is served with written "Charges and Specifications" identifying the alleged misconduct (see 38 RCNY 15-11). NYPD disciplinary proceedings are conducted in the NYPD's internal adjudicatory forum, and hearings are open to the public (see 38 RCNY 15-04 [g]).[FN1] Following an administrative hearing, the judge issues a "Draft Report and Recommendation," consisting of "a summary and analysis of the testimony, recommended findings of fact and conclusions of law, and recommendations for the disposition of the Charges and Specifications" (38 RCNY 15-06 [a] [2]). The draft is sent to the parties, including the subject officer and his or her counsel, for review and an opportunity to comment (38 RCNY 15-06 [b], [c]). The Deputy Commissioner of Trials (or an Assistant Deputy Commissioner) then finalizes the Report and Recommendation and forwards it to the Police Commissioner, along with the transcript of the proceedings, any exhibits, and any comments submitted by the parties (38 RCNY 15-06 [c]).
In rendering a final determination, the Police Commissioner "may approve the recommendation or modify the findings or the penalty" (38 RCNY 15-08 [a]). If the Commissioner approves the findings and penalty, the Commissioner stamps the Report and Recommendation as "Approved" and signs it, along with a "Disposition of Charges" form that identifies each charge, its disposition, and the penalty imposed.
B.
In August 2011, the NYCLU submitted a FOIL request to the NYPD seeking (1) "[c]opies of all final opinions, dated from January 1, 2001 to present, from the department trial room (Deputy Commissioner of Trials) adjudicating charges and specifications arising out of cases in which the CCRB has substantiated charges against a member of the department," and (2) {**32 NY3d at 562}"[c]opies of documents identifying the formal and final discipline imposed in conjunction with each decision." The NYPD denied the request, reasoning that the requested records were exempt from disclosure under several FOIL exemptions, including Public Officers Law § 87 (2) (a), which provides an exception for records that are "specifically exempted from disclosure by state or federal statute." In particular, the NYPD asserted that the records were protected by Civil Rights Law § 50-a since they "are used to evaluate the continued employment of police officers by the NYPD."
The NYCLU administratively appealed. The NYPD granted the appeal in part, producing more than 700 pages of Disposition of Charges forms with redactions intended to conceal the identifying information of the subject officers and complainants. With respect to the "final opinions"—the approved Report and Recommendation documents—the NYPD denied the appeal, again concluding that the documents were exempt from disclosure pursuant to Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a, among other FOIL exemptions. The NYPD noted that Civil Rights Law § 50-a "defines a process which is the exclusive means for obtaining records that fall within its purview" and requires, among other things, "giving notice to the police officer who is the subject of the records, and obtaining a court order directing disclosure pursuant to the process defined in [Civil Rights Law] § 50-a (2)."
The NYCLU then commenced this CPLR article 78 proceeding, seeking disclosure of the withheld NYPD disciplinary records. Supreme Court denied the NYPD's subsequent motion to dismiss and directed the NYPD to "select five decisions at random, and redact them to remove anything to identify the subject of the complaint." Supreme Court further ordered the NYPD to notify the subject officers of the proceeding and the proposed redactions.
Pursuant to Supreme Court's order, the NYPD selected five decisions, applied redactions, and submitted the redacted documents to Supreme Court for in camera review. The NYPD also filed an answer to the NYCLU's petition, contending that disclosure of the documents, even in redacted form, was prohibited by Civil Rights Law § 50-a because the redactions could not adequately conceal the officers' identities. The five subject officers similarly objected to the disclosure of the redacted documents. Supreme Court subsequently "deem[ed] the[ ] redactions [*2]adequate" and ordered that "[a]ll future{**32 NY3d at 563}requests are to be done as the five in camera submissions." The NYPD appealed.
The Appellate Division unanimously reversed and dismissed the proceeding (148 AD3d 642 [1st Dept 2017]). Citing "controlling precedent"—namely, our decisions in Matter of Short v Board of Mgrs. of Nassau County Med. Ctr. (57 NY2d 399 [1982]) and Matter of Karlin v McMahon (96 NY2d 842 [2001])—the Appellate Division determined that it could not "order respondents to disclose redacted versions of the disciplinary decisions" (Matter of New York Civ. Liberties Union, 148 AD3d at 643). The Appellate Division granted the NYCLU's motion for leave to appeal.
II.
The FOIL exemption at issue, Public Officers Law § 87 (2) (a), provides that an agency may deny access to records that "are specifically exempted from disclosure by state or federal statute." The parties agree that the disciplinary decisions requested by the NYCLU are covered by a state statute: Civil Rights Law § 50-a.
Civil Rights Law § 50-a provides that "[a]ll personnel records used to evaluate performance toward continued employment or promotion . . . shall be considered confidential and not subject to inspection or review" (Civil Rights Law § 50-a [1]). The statute contains only two exceptions to confidentiality: officer consent (Civil Rights Law § 50-a [1]), and court authorization (Civil Rights Law § 50-a [3]).[FN2] Subdivisions (2) and (3) of Civil Rights Law § 50-a set forth a procedure to obtain a court order of disclosure, and establish a number of procedural safeguards that must be observed before judicial authorization may be granted. Specifically, subdivision (2) provides that, "[p]rior to issuing" a court order authorizing the release of confidential personnel records, "the judge must review all such requests and give interested parties"—including the subject officer(s)—"the opportunity to be heard" (Civil Rights Law § 50-a [2]). The court may not issue an order "without a clear showing of facts sufficient to warrant the judge to request records for review" (id.). In addition, subdivision (3) provides that, "[i]f, after such hearing, the judge concludes there is a sufficient basis" to {**32 NY3d at 564}request the records for review, "he shall sign an order requiring that the personnel records in question be sealed and sent directly to him" (Civil Rights Law § 50-a [3]). The court must then "review the file and make a determination as to whether the records are relevant and material in the action before him" (id.). If that standard is satisfied, "the court shall make those parts of the record found to be relevant and material available to the persons so requesting" (id.).
A.
The disciplinary decisions requested by the NYCLU are quintessential "personnel records" protected by Civil Rights Law § 50-a. The statute was designed to protect police officers from the use of their records "as a means for harassment and reprisals and for purposes of cross-examination by plaintiff's counsel during litigation" (Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d 26, 31-32 [1988] [collecting legislative history]). To that end, Civil Rights Law § 50-a "prevent[s] release of sensitive personnel records that could be used in litigation for the purpose of harassing or embarrassing" officers (id. at 33). "Documents pertaining to misconduct or rules violations" by an officer are "the very sort of record which, the legislative history reveals, was intended to be kept confidential" (id. at 31).
Contrary to the NYCLU's claim, the protection afforded by Civil Rights Law § 50-a is not limited to the context of actual or potential litigation (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 153 [1999]; see also Prisoners' Legal Servs., 73 NY2d at 32). Rather, the "legislative objective" of section 50-a extends "beyond precluding disclosure on behalf of defendants in pending [litigation]"; it seeks to prevent any "abusive exploitation of personally damaging information contained in officers' personnel records" (Daily Gazette, 93 NY2d at 154-155). Indeed, if the statute's protection were limited to the litigation context, Civil Rights Law § 50-a could easily be circumvented "by the simple expedient of making FOIL requests for the records first and bringing the lawsuit later" (Prisoners' Legal Servs., 73 NY2d at 33). Accordingly, the "decisive factor" in determining whether a personnel [*3]record is exempted from FOIL disclosure under Civil Rights Law § 50-a is "the potential use of the information," rather than "the specific purpose of the particular individual requesting access," or "whether the request was actually made in contemplation of{**32 NY3d at 565} litigation" (Daily Gazette, 93 NY2d at 156-157 [emphasis added]).
For instance, in Matter of Daily Gazette, the petitioners, two newspapers, submitted FOIL requests seeking police department records concerning disciplinary action against 18 police officers (93 NY2d at 152). Rejecting the petitioners' "exceedingly narrow interpretation" of Civil Rights Law § 50-a, the Court determined that statutory protection over police personnel records "went beyond precluding disclosure on behalf of defendants in pending criminal cases," and applied irrespective of the "identity, status and purpose of the person requesting access" (93 NY2d at 153, 155-156). "Potential abusive exploitation," the Court noted, exists "irrespective of how, at whose behest or for what purpose the information is released into the public domain" (id. at 158). Because disclosure of the requested material in Daily Gazette presented "the risk of its use to embarrass or humiliate the officers involved," the documents remained confidential pursuant to Civil Rights Law § 50-a (Daily Gazette, 93 NY2d at 159).
Much like the disciplinary records shielded from disclosure in Daily Gazette, the documents at issue here are " 'the very sort of record' " presenting a potential for abusive exploitation and intended to be kept confidential under Civil Rights Law § 50-a (Daily Gazette, 93 NY2d at 159, quoting Prisoners' Legal Servs., 73 NY2d at 31). The NYCLU's FOIL request seeks internal police department disciplinary records, spanning a 10-year period, that arise from civilian complaints against NYPD officers. These records are replete with factual details regarding misconduct allegations, hearing judges' impressions and findings, and any punishment imposed on officers—material ripe for "degrad[ing], embarrass[ing], harass[ing] or impeach[ing] the integrity of [an] officer" (Daily Gazette, 93 NY2d at 158). The documents are, accordingly, protected from disclosure under Civil Rights Law § 50-a.
B.
[2] Once it is implicated, Civil Rights Law § 50-a does not merely guarantee confidentiality in the abstract. Rather, the statute establishes specific procedural rights and mechanisms designed to implement its protective goals. In particular, while protection under Civil Rights Law § 50-a extends broadly beyond the litigation setting, disclosure is "strictly limited" to specified contexts under the statute (Daily Gazette, 93 NY2d at{**32 NY3d at 566}154). The statutory language clearly provides that, before disclosure may be ordered, the court must determine that the requested records are "relevant and material in the action before [it]," and even then, it authorizes disclosure of only "those parts of the record found to be relevant and material" to the pending action (Civil Rights Law § 50-a [3] [emphasis added]). Construing this statutory text, we have unequivocally held: "There can be no question" that Civil Rights Law § 50-a permits court-ordered disclosure "only in the context of an ongoing litigation" (Prisoners' Legal Servs., 73 NY2d at 33). Absent officer consent, protected personnel records are shielded from disclosure "except when a legitimate need for them has been demonstrated . . . to obtain a court order" based on a "showing that they are actually relevant to an issue in a pending proceeding" (Daily Gazette, 93 NY2d at 155). Here, in the context of the NYCLU's FOIL request, the requested records are not "relevant and material" to any pending litigation (Civil Rights Law § 50-a [3]), and accordingly, they are not disclosable.
C.
The NYCLU and its amici advance a number of policy arguments that, in their view, counsel in favor of disclosure. Public access to NYPD disciplinary decisions, they contend, is critical to maintaining public confidence in the integrity of the police force and ensuring that NYPD disciplinary actions properly apply the relevant legal principles. And redactions, they argue, are commonly used in a variety of contexts to balance transparency goals with individual privacy interests. The NYPD similarly suggests, at least before this Court, that redacted disclosure of protected personnel records in the FOIL context obviates the need for strict compliance with Civil Rights Law § 50-a where the redactions are, in the department's view, adequate to protect officer confidentiality.
These policy arguments are not new. To the contrary, in enacting and amending Civil Rights Law § 50-a, the legislature was well aware of them. In fact, "opposition to the bill was expressed on the ground that the needs to prevent oppressive use of police personnel records 'do not offset the benefits of assuring the availability to the public of the performance evaluation of its servants' " (Daily Gazette, 93 NY2d at 155, quoting Mem of Special Duty Atty-[*4]Gen Joseph P. Hoey, Special Prosecutor Suffolk County, Bill Jacket, L 1976, ch 413). The legislature{**32 NY3d at 567} "recognized" that section 50-a "would have some restrictive impact on open public access" and would "have the effect of insulating" certain "disciplinary records . . . from disclosure" (id. at 155). Notwithstanding this resistance, the legislature made the "policy choice" to "shield the personnel records of these officers from disclosure" by extending broad statutory protection while providing only limited exceptions for their release (id. at 154-155). We are not at liberty to second-guess the legislature's determination, or to disregard—or rewrite—its statutory text (see Matter of Wolpoff v Cuomo, 80 NY2d 70, 79 [1992]).
The alternative "redacted disclosure" regime proposed by the parties would eviscerate the legislature's mandate. Civil Rights Law § 50-a sets up a "legal process whereby the confidentiality of the records may be lifted by a court, but only after an in camera inspection and affording affected parties notice and an opportunity to be heard" (Daily Gazette, 93 NY2d at 154). The parties' proposal would, instead, enable an agency to circumvent the host of statutory protections belonging to covered officers by simply applying redactions that the agency, in its sole discretion, deems adequate. That scheme would transform Civil Rights Law § 50-a into an optional mechanism applicable only when (and if) the agency chooses to invoke it.
Importantly, the FOIL exemption at issue, Public Officers Law § 87 (2) (a), applies not only to section 50-a personnel records, but to all records covered by the various "state or federal statutes" that serve to protect the confidentiality of countless categories of individuals. That exemption incorporates protective statutes that safeguard the confidentiality of, for example, sex offense victims (Civil Rights Law § 50-b), medical patients (Public Health Law § 2803-c [3] [f]), and prospective jurors (Judiciary Law § 509 [a]), to name a few. While "nothing in FOIL" prohibits an agency from "disclos[ing] exempt records at [its] discretion" (Rivera, J., dissenting op at 
576-577 [emphasis added]), these distinct and mandatory New York statutory provisions expressly operate to guarantee confidentiality notwithstanding FOIL's permissive disclosure regime (e.g. Civil Rights Law § 50-a [1] [requiring that "(a)ll personnel records . . . shall be considered confidential and not subject to inspection or review" (emphasis added)]; Civil Rights Law § 50-b [1] [requiring that "(t)he identity of any victim of a sex offense . . . shall be confidential" (emphasis added)]; Public Health Law § 2803-c [3] [f] [requiring that "(e)very patient shall have the right to {**32 NY3d at 568}. . . confidentiality in the treatment of personal and medical records" (emphasis added)]; Judiciary Law § 509 [a] [requiring that "(juror qualification) questionnaires and records shall be considered confidential and shall not be disclosed" (emphasis added)]). Nothing in FOIL authorizes a petitioner—or a government agency—to exercise "absolute discretion" to override these critical statutory protections or their promise of confidentiality (Rivera, J., dissenting op at 
576, 587 ["embrac(ing) the reasoning of Chief Judge Cooke's dissent in Short," which would have ordered disclosure of redacted abortion records protected by Civil Rights Law § 50-b]). Here, too, Civil Rights Law § 50-a provides the exclusive means for disclosure of confidential personnel records. The parties cannot sidestep its mandate through the expedient of redacted FOIL disclosure.[FN3] [*5]III.
[3] FOIL's statutory scheme separately makes clear that redacted disclosure cannot be compelled where, as here, an agency has met its burden of demonstrating that records are exempt from disclosure under Public Officers Law § 87 (2) (a). FOIL's exemption provisions are housed in Public Officers Law § 87 (2), which enumerates the categories of records that are excluded from mandatory disclosure. The second prescribed exemption, Public Officers Law § 87 (2) (b), applies to records that "if disclosed would constitute an unwarranted invasion of personal privacy," as defined by Public Officers Law § 89 (2). Public Officers Law § 89 (2), in turn, supplies the statutory authority for an agency to "delete identifying details" in order "to prevent unwarranted invasions of personal privacy" (Public Officers Law § 89 [2] [a]). It further provides that "disclosure {**32 NY3d at 569}shall not be construed to constitute an unwarranted invasion of personal privacy"—such that disclosure may be compelled—where "identifying details are deleted" (Public Officers Law § 89 [2] [c] [i]). FOIL does not, however, contain a similar redaction provision applicable to Public Officers Law § 87 (2) (a).[FN4]
We discussed this omission in Matter of Short v Board of Mgrs. of Nassau County Med. Ctr., which involved a FOIL request for medical records relating to claims for Medicaid reimbursement for abortions performed at a medical center (57 NY2d 399 [1982]). There, the Court held that the requested records were "specifically exempted" from FOIL disclosure under Public Officers Law § 87 (2) (a) and state statutes governing patient privacy, and that redacted disclosure of the records—with all personal identifying data deleted—could not be compelled (id. at 402). The Court recognized that the "statutory authority" to redact under FOIL "does not extend" to records exempt from disclosure by state or federal statute under Public Officers Law § 87 (2) (a); rather, redaction authority for exempt records "extends only" to FOIL's unwarranted invasion of personal privacy exemption, Public Officers Law § 87 (2) (b) (id. at 401). As we explained in Short, by explicitly providing for redaction "only within [a] single specified category"—the "unwarranted invasion of personal privacy" category—the legislature demonstrated its "intention to restrict the deletion device to that single category" (id. at 404-405). In other words, had the legislature sought to authorize court-ordered redaction for the FOIL exemption at issue, Public Officers Law § 87 (2) (a), it could have easily done so (see McKinney's Cons Laws of NY, Book 1, Statutes § 74; 82 CJS, Statutes § 408). Accordingly, even though the "preservation of individual confidentiality" might be "served by deletion of identifying details," the Court determined that redaction of records exempt under Public Officers Law § 87 (2) (a) could not be compelled (Short, 57 NY2d at 406).
{**32 NY3d at 570}Short's holding was reaffirmed nearly two decades later in Matter of Karlin v McMahon (96 NY2d 842 [2001]). There, the New York State Police denied the petitioner's FOIL request pursuant to Civil Rights Law § 50-b, [*6]which "provides a statutory exemption from disclosure for documents that tend to identify the victim of a sex offense" (Karlin, 96 NY2d at 843). On appeal, the Court remitted the matter to Supreme Court to determine whether the police had met their burden of showing that Civil Rights Law § 50-b "applie[d] to all the records [the] petitioner seeks" (id.). The Court made clear, however, that if the statute applied, redacted disclosure could not be compelled: "[I]nsofar as the requested records are exempt from disclosure pursuant to State statute, the police are not obligated to provide the records even though redaction might remove all details which 'tend[ ] to identify the victim' " (id. [citations omitted]).
Here, as in Short and Karlin, the requested records are exempt from disclosure under Public Officers Law § 87 (2) (a), which contains no statutory authorization for redaction. As such, as in Short and Karlin, redacted disclosure cannot be compelled. The dissent's core contention—that Short and Karlin "should not be followed" (Rivera, J., dissenting op at 
587), and the Court should extend the use of redaction to Public Officers Law § 87 (2) (a)—is "perhaps a predicate on which to ground an argument to the Legislature that [FOIL] should be amended" (Short, 57 NY2d at 406).[FN5] It is not grounds for judicial revision of FOIL (id.).
IV.
This case presents a straightforward application of Civil Rights Law § 50-a and Public Officers Law § 87 (2) (a), which mandate confidentiality and supply no authority to compel redacted disclosure. To the extent the dissent would prefer to revoke civil rights protections afforded to police officers (Civil Rights Law § 50-a), victims of sex crimes (Civil Rights Law § 50-b), medical patients (Public Health Law § 2803-c [3] [f]), {**32 NY3d at 571}or others, those arguments are properly directed to the legislature. The order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.

Stein, J. (concurring). Although I agree with the majority's conclusion that personnel records protected by Civil Rights Law § 50-a are exempt from disclosure under Public Officers Law § 87 (2) (a), I write separately to explain that, in my view, it is not necessary to rely on Matter of Short v Board of Mgrs. of Nassau County Med. Ctr. (57 NY2d 399 [1982]) in order to reach that conclusion.
As the majority recognizes, Public Officers Law § 87 (2) (a)—by stating that an agency may deny access to records "specifically exempted from disclosure by state or federal statute"—expressly contemplates that confidentiality of records may be mandated by another provision of law. Civil Rights Law § 50-a is such a statute inasmuch as it not only establishes that certain personnel records must be kept confidential, but also furnishes a detailed legal process whereby a court may compel disclosure of such records in limited circumstances upon notice and an opportunity for interested parties to be heard (see Civil Rights Law § 50-a [1], [2], [3]). Section 50-a contains its own express exemption, allowing disclosure to certain public officials who require access in furtherance of their official duties (see Civil Rights Law § 50-a [4]). As the majority holds, these statutes—Civil Rights Law § 50-a and Public Officers Law § 87 (2) (a)—must be read together (see Matter of Goodman [Barnard Coll.—Commissioner of Labor], 95 NY2d 15, 21 [2000]).
Notably, Civil Rights Law § 50-a does not permit the disclosure of personnel records—redacted or otherwise—outside the context of pending litigation to which the records are relevant and material (see Civil Rights Law § 50-a [3]; Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., 73 NY2d 26, 33 [1988]). The Freedom of Information Law (FOIL) provides no mechanism for an agency to otherwise overcome the mandate of confidentiality in section 50-a (see Matter of Newsday, Inc. v Sise, 71 NY2d 146, 151 [1987], cert denied 486 US 1056 [1988]). To allow disclosure under FOIL of records subject to section 50-a, even with redaction, would render meaningless the procedural protections provided by that section.
Thus, as the majority explains, the only reasonable way to reconcile and give effect to both the FOIL exemption contained{**32 NY3d at 572} in Public Officers Law § 87 (2) (a) and the protections embodied in Civil Rights Law § 50-a is to interpret the former as incorporating the legal standard of the latter. In other words, Public Officers Law § 87 (2) (a) recognizes that records exempt from disclosure by other statutes may also be exempt from FOIL disclosure, and section 50-a, by its own terms, forecloses any claim that redaction is permitted. It necessarily follows that section 50-a "provides the exclusive means for disclosure of confidential personnel records" (majority op at 
568). Because the New York City Police Department's disciplinary determinations are undisputedly personnel records within the meaning of section 50-a, those records are subject to all of the protections of that statute.
My analysis is consistent with sections I and II of the majority opinion. However, because the question before us is readily answered by reference to the plain language of Public Officers Law § 87 (2) (a) and Civil Rights Law § 50-a, I find it unnecessary to rely on Matter of Short (57 NY2d at 405) or to reach the continuing viability of this Court's reasoning in that case regarding the extent to which an agency may be required under FOIL to release redacted records. Likewise, there is no need to analyze the interplay between Matter of Short and those cases raised by the dissent (see e.g. Matter of Gould v New York City Police Dept., 89 NY2d 267, 275 [1996]; Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 45 [2011]; Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 487 [2005]; see also Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 237 [2018]) in order to resolve this appeal. I, therefore, join sections I and II of the majority opinion, but I decline to join section III.

Rivera, J. (dissenting). New York State's Freedom of Information Law (FOIL) provides public access to government records unless the responsible agency exercises its discretion to withhold information that falls within a small number of statutory exemptions (see generally Public Officers Law § 87). To fulfill its obligations under FOIL, an agency may redact exempted information from a "mixed document," one that contains both exempted and nonconfidential material. Both petitioner New York Civil Liberties Union (NYCLU) and respondent New York City Police Department (NYPD) agree with these uncontroversial descriptions of the statutory requirements and current practice. Indeed, it is how the mandates of{**32 NY3d at 573} FOIL are effectuated everyday by agencies and the judiciary when called upon to resolve a disputed request for government records.
Yet, the majority now asserts that agencies, the courts, and indeed, the general public have labored under a misunderstanding of FOIL's mechanics and salutary purpose. According to the majority, redaction is unavailable even where it may be the sole method to effectuate the statutory goal of promoting government transparency "to hold the governors accountable to the governed" (NLRB v Robbins Tire & Rubber Co., 437 US 214, 242 [1978]). As a general proposition at odds with the statutory text and intent, this is bad decisionmaking. However, it is exponentially more troublesome because the majority relies on a constrained reading of FOIL and a decontextualized analysis of the Civil Rights Law to reach an erroneous conclusion: all employment records of police officers are concealed from public review, even if an officer's identifying information is redacted, except in the limited circumstances where the specific records are material to pending litigation. The Court has held just the opposite, concluding that when a FOIL request seeks a police officer's employment records "nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a—to prevent the potential use of information in the records . . . to degrade, embarrass, harass or impeach the integrity of the officer" (Matter of Daily Gazette Co. v City of Schenectady, 93 NY2d 145, 157-158 [1999]). I dissent from the majority's retreat from this prior case law, and what I view as an interpretation of our statutes that cloaks government activity in secrecy and undermines our state's public policy of open government.
I.
 The NYCLU's FOIL Request
The NYCLU appeals the denial of its FOIL request for copies of 10 years of NYPD final disciplinary rulings in individual police officer abuse cases, substantiated and referred to the NYPD by New York City's independent Civilian Complaint Review Board. The NYPD claims it may deny disclosure of the disciplinary rulings pursuant to one of FOIL's exemptions, by which an "agency may deny access to records or portions thereof that . . . are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). It asserts that the disciplinary rulings here are "personnel records used to evaluate performance toward continued employment or promotion" of the officers and thus confidential within the{**32 NY3d at 574} meaning of Civil Rights Law § 50-a. The NYPD also claims that the disciplinary rulings are heavily fact-laden and therefore redaction would not effectively mask a police officer's identity. Additionally, it argues that, even if all identity-revealing information could be excised from the rulings, the final opinions, stripped bare of context, would be unrepresentative of the Commissioner's rationale. Such [*7]a document would ill serve FOIL's goals as it could not provide the public with insight into the underlying analysis justifying the final ruling. The NYCLU agrees with the NYPD that the requested documents are subject to redaction, but objects to the NYPD's unsubstantiated claims that redaction is categorically unavailable here, or that the documents should be denied because redaction would distort the meaning of the rulings. The NYCLU argues that redaction inherently leaves the reader with an incomplete view and, thus cannot be the basis for denial of a FOIL request.
After in camera review of a random sample of redacted disciplinary rulings, Supreme Court ordered disclosure of redacted copies of all the rulings covered by the NYCLU's FOIL request. The Appellate Division reversed, not on the specifics of FOIL request but based on a blanket exemption of all Civil Rights Law § 50-a personnel records, notwithstanding the ability of the NYPD to remove all police officer identifying information (Matter of New York Civ. Liberties Union v New York City Police Dept., 148 AD3d 642, 643 [1st Dept 2017]). This was error, as the primary purposes of Civil Rights Law § 50-a and FOIL are properly achieved by disclosure of the requested police disciplinary decisions, redacted as necessary to preserve anonymity of named or implicated police officers.
II.
A. Freedom of Information Law
New York State's FOIL requires that, upon request, government agencies provide access to records within its control (Public Officers Law § 87). The legislative purpose, as explained in the legislative declaration, is to make government transparent:
"[A] free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government . . .{**32 NY3d at 575}
"The people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.
"The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article" (Public Officers Law § 84).
Echoing this clear statement of legislative intent, the Court has recognized that the statute "proceeds under the premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). This right to know is not merely a lofty ideal without practical implications. Instead, it has frequently proved to be a "remarkably effective device in exposing waste, negligence and abuses on the part of government" and enables individuals to intelligently participate in the democratic process by ensuring the public has sufficient information about the government's actions (id.).
The legislature balanced this "general policy of disclosure" against the state's interest in keeping certain governmental matters confidential by adopting a short list of exemptions (id.; Public Officers Law § 87 [2] [a]-[i],[*8][o]).[FN1] Specifically, FOIL provides that "[e]ach agency shall, in accordance with its {**32 NY3d at 576}published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof" that fall within any of these designated categories of records (Public Officers Law § 87 [2]). "All government records are thus presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274-275 [1996]).
In accordance with the goal of government transparency, these exemptions "are to be narrowly interpreted so that the public is granted maximum access to the records of government" (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]; Gould, 89 NY2d at 275; Matter of Russo v Nassau County Community Coll., 81 NY2d 690, 697-698 [1993]; Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]). This is so [*9]because "blanket exemptions for particular types of documents are inimical to FOIL's policy of open government" (Gould, 89 NY2d at 275). An agency that seeks to invoke an exemption, must therefore "articulate '[a] particularized and specific justification' for not disclosing requested documents" (id., quoting Fink, 47 NY2d at 571).
In line with its overarching policy favoring disclosure, the legislature did not foreclose disclosure of all records that fall within an exemption. Instead, while the statute empowers an "agency to deny access to the specified records," nothing in FOIL "restricts the right of the agency if it so chooses to grant access to records within any of the statutory exceptions, with or without deletion of identifying details" (Matter of Short v Board of Mgrs. of Nassau County Med. Ctr., 57 NY2d 399, 404 [1982], citing to Chrysler Corp. v Brown, 441 US 281 [1979]). In other words, to maximize disclosure, "the agency does not have carte blanche to withhold any information it pleases" (Fink, 47 NY2d at 571), and it has absolute discretion to disclose records that may fall within an exemption.{**32 NY3d at 577}
In this regard, FOIL is consistent with the federal Freedom of Information Act (FOIA), which permits agencies to disclose exempt records at their discretion (see 5 USC § 552). "As we have observed, '[f]ederal case law and legislative history . . . are instructive' when interpreting a FOIL provision 'patterned after the Federal analogue' " (Matter of Friedman v Rice, 30 NY3d 461, 480 [2017], quoting Matter of Lesher v Hynes, 19 NY3d 57, 64 [2012]). The FOIA lists nine exemptions to disclosure, including records "related solely to the internal personnel rules and practices of an agency . . . [or] specifically exempted from disclosure by statute . . . ." (5 USC § 552 [b] [2], [3].) Like FOIL's exemptions, FOIA merely "demarcates the agency's obligation to disclose" and "does not foreclose disclosure" (Chrysler, 441 US at 292-293 ["Congress did not design the FOIA exemptions to be mandatory bars to disclosure"]; Mobil Oil Corp. v United States Envtl. Protection Agency, 879 F2d 698, 700 [9th Cir 1989] ["The exemptions are permissive, and an agency may voluntarily release information that it would be permitted to withhold under the FOIA exemptions"]).[FN2] Indeed, at the time of its enactment, FOIL was intended to "conform New York State's version of Freedom of Information to the Federal law" (Letter of cosponsor Senator Anderson, Bill Jacket, L 1977, ch 933), and agencies understood that when considering records within one of the enumerated exemptions "an agency may, but is under no obligation to, claim the exemption and deny access to the record" (Mem of Div of Criminal Justice Servs at 1, Bill Jacket, L 1977, ch 933).
Lastly, "if the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption, it should conduct an in camera inspection of representative documents and order disclosure of all nonexempt, appropriately redacted material" (Gould, 89 NY2d at 275, citing Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, 133 [1985]; Matter ofM. Farbman & Sons v New York City Health{**32 NY3d at 578}& Hosps. Corp., 62 NY2d 75, 83 [1984]). This procedure is now a well-established, common feature of judicially-reviewed FOIL requests (Matter of Schenectady County Socy. for the Prevention of Cruelty to Animals, Inc. v Mills, 18 NY3d 42, 46 [2011] ["Courts deciding FOIL issues often order redaction when a record contains both exempt and nonexempt information"]; see e.g. Data Tree, 9 NY3d 464; Xerox Corp., 65 NY2d at 133).
B. Civil Rights Law § 50-a
[*10]
Civil Rights Law § 50-a (1) provides:
"All personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order."
Subdivisions (2) and (3) establish a process for a court to determine whether to disclose these personnel records. The court must first give interested parties an opportunity to be heard and determine if there is "a clear showing of facts sufficient to warrant the judge to request records for review" (Civil Rights Law § 50-a [2]). If such a showing is made, the court "shall then review the file and make a determination as to whether the records are relevant and material in the action before [it]. Upon such a finding the court shall make those parts of the record found to be relevant and material available to the persons so requesting" (Civil Rights Law § 50-a [3]).
The Court has expounded on the proper interpretation of Civil Rights Law § 50-a and its interplay with FOIL in a trio of cases. In the first, Capital Newspapers, a journalist investigating alleged abuses of sick leave privileges by Albany police officers requested copies of the sick time records of the police officers' union president (67 NY2d at 564-565). The Court held Civil Rights Law § 50-a does not create a blanket exemption from FOIL disclosure (id. at 569). Rather, given the common law's "highly qualified" privilege for withholding certain police records, and the legislative history of Civil Rights Law § 50-a, the Court concluded that the statute had a limited purpose: to curb the use of police personnel records during litigation to embarrass and harass police officers (id. at 568). As the Court explained, "the legislative intent underlying the enactment of {**32 NY3d at 579}Civil Rights Law § 50-a was narrowly specific, 'to prevent time-consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action' " (id. at 569, quoting Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 109 AD2d 92, 96 [3d Dept 1985]). In light of FOIL's interest in open government, and this legislative history, the Court reasoned that "section 50-a should not be construed to exempt [the officer's sick leave report] from disclosure by the police department in a nonlitigation context under Public Officers Law § 87 (2) (a)" (id.).
In the second case, Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Correctional Servs., the Court concluded that Civil Rights Law § 50-a applies to records sought outside the context of litigation (73 NY2d 26 [1988]). Prisoners' Legal Services of New York requested inmate grievances and agency decisions pertaining to a specific correction officer at Fishkill Correctional Facility (id. at 29-30). The Court explained that the case did not turn on an interpretation of FOIL, but whether the requested documents were personnel records within the meaning of Civil Rights Law § 50-a (id. at 30-31). On that score, the Court concluded that they were and rejected the argument that Civil Rights Law § 50-a was inapplicable where records were not sought for use in a related action (id. at 32-33). The Court explained that the purpose of section 50-a was "to protect the officers from the use of records—including unsubstantiated and irrelevant complaints of misconduct—as a means for harassment and reprisals and for purposes of cross-examination by plaintiff's counsel during litigation" (id. at 31-32). However, the Court noted that nothing in the statutory language suggested that the Civil Rights Law § 50-a protection applies only upon commencement of litigation (id. at 32-33). Thus, the documents were covered under Civil Rights Law § 50-a (id. at 31-32).
In response to the dissent's textualist argument that Civil Rights Law § 50-a is inapplicable outside the litigation context, the Court acknowledged that subdivisions (2) and (3) permit "court-ordered disclosure of personnel records within its protection—i.e., those that have potential use in harassing and embarrassing officers in litigation—only in the context of an ongoing litigation" (id. at 33). However, it held that the protection of section 50-a was not coextensive with the court's authority to order disclosure as such a narrow view would allow parties to circumvent the law "by the simple expedient of making {**32 NY3d at 580}FOIL requests for the records first and bringing the lawsuit later" (id.).
The Court also distinguished Capital Newspapers because the records in that case "were sought for a purpose and in a context that could have had no relation to potential litigation" (id.). Rather than limiting the scope of section 50-a to records pertinent to pending litigation, Capital Newspapers "simply recognized that the legislative intent in enacting the 1981 amendment to section 50-a was to prevent release of sensitive personnel records that could be used [*11]in litigation for the purpose of harassing or embarrassing correction officers" (id.). Thus, "records having remote or no such potential use . . . fall outside the scope of the statute" (id.).
Daily Gazette, the last of the triad, involved a FOIL request by two newspapers seeking Schenectady Police Department records of disciplinary actions against 18 police officers (93 NY2d at 152). The officers had been the subject of news reports concerning an incident where they had thrown eggs at a civilian's vehicle (id.). After the Police Chief confirmed that the officers had admitted their participation in the incident and had been disciplined the newspapers requested all documents related to the incident "or the identities of the sanctioned officers and the specific punishment imposed upon each" (id.).
In its holding, the Court reaffirmed that the statutory protections of Civil Rights Law § 50-a are not limited to those sought in the context of actual litigation. While one of the dangers addressed by the law was the possibility that a police officer testifying in a legal proceeding would be "discredited by confrontation with irrelevant 'complaints, disciplinary proceedings or reprimands filed against them in the past' " (id. at 155, quoting Mem of Div of Budget, Bill Jacket, L 1976, ch 413) the statute was also designed "to prevent abusive exploitation of personally damaging information contained in officers' personnel records" that could be used to harass officers or their families (id. at 154-155). Accordingly, the "decisive factor in determining whether an officer's personnel record was exempted from FOIL disclosure under Civil Rights Law § 50-a was the potential use of the information contained therein, not the specific purpose of the particular individual requesting access, nor whether the request was actually made in contemplation of litigation" (id. at 156-157). The critical question then is whether the requested documents can be used against the officers "as a device for harassing or embarrassing" them. That inquiry, {**32 NY3d at 581}by its nature, is specific to the impact on the identified individual officer.
Significantly, the Court in Daily Gazette analyzed the interplay between FOIL's disclosure mandate and the protections afforded an individual officer by Civil Rights Law § 50-a, declaring that the latter's "comprehensive statutory exemption must be tempered when it interacts with the competing, equally strong legislative policy of open government through broad public access to governmental agency records embodied in the FOIL legislation" (id. at 157). The Court concluded that when a FOIL request seeks personnel records that fall within Civil Rights Law § 50-a "nondisclosure will be limited to the extent reasonably necessary to effectuate the purposes of [the law]—to prevent the potential use of information in the records in litigation to degrade, embarrass, harass or impeach the integrity of the officer" (id. at 157-158).
The burden on the agency to withhold the requested information from disclosure is heavy and turns on the potential use against a known individual. "In the case of a claim that disclosure is 'specifically exempted from disclosure by state . . . statute' . . . the agency must demonstrate a substantial and realistic potential of the requested material for the abusive use against the officer" (id. at 159). To achieve the goals of the respective statutes, the Court sanctioned the familiar process of redaction: "disclosure for uses that would not undermine the protective legislative objectives could be attained . . . through redaction by the agency having custody of the records, tailored . . . so as to preclude use in personal attacks against an officer which Civil Rights Law § 50-a was enacted to preclude" (id.). In this way, a FOIL request may be granted, and the public access goals of FOIL achieved, "without sacrificing the values the Legislature embraced in enacting Civil Rights Law § 50-a" (id.).
As these cases illustrate, in the context of a FOIL request for personnel records covered by Civil Rights Law § 50-a, the Court has never, as the majority has here, untethered the confidentiality requirement of section 50-a from its legislative intent to protect officers from harassment based on records specific to them. The Court has consistently treated Civil Rights Law § 50-a as a statutory bulwark against disclosure of sensitive personnel records that reveal an officer's identity and disciplinary history because such disclosure has the potential to degrade or embarrass an officer. The law does not elevate confidentiality{**32 NY3d at 582} as a hollow goal unto itself. These cases demonstrate that, for more than 30 years, this Court has been mindful of the narrow purpose of Civil Rights Law § 50-a when considering whether personnel records must be disclosed under FOIL. Time and again, the Court has gone to great lengths to harmonize the public policy that animates Civil Rights Law § 50-a and FOIL, siding contrarily in favor of nondisclosure in those situations where maintaining confidentiality is "reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a" (id. at 157).
[*12]That concern is not implicated where the subject of the records is unknown, as where all identifying information is redacted. As the Court concluded in Daily Gazette, in what may be considered prescient given the facts of the instant appeal,
"it may well be possible for petitioners largely to fulfill their important function of dissemination of matters of legitimate public interest, i.e., concerning the appropriateness of the City's response to off-duty misconduct by members of its police force, without sacrificing the values the Legislature embraced in enacting Civil Rights Law § 50-a" (id. at 159).
III.
The Foil Request Should be Granted
Applying the relevant statutes and our prior case law to the instant appeal, the NYCLU's FOIL request for the disciplinary rulings should be granted and the records redacted of all information that could lead to the identification of individual police officers. The random sample of rulings Supreme Court reviewed in camera were redacted of names, height, weight, religion, and profession of complainants, officers, and witnesses; exact dates and locations of officer assignments; and vehicle makes and models. The same redaction process—allowing for removal as needed of additional types of identifying information—can similarly be conducted on the remaining undisclosed disciplinary rulings.
The NYPD's claim that its disciplinary rulings are ill-suited to redaction because the documents can never be completely purged of identifying information is essentially an argument for a categorial exclusion from FOIL. We have previously{**32 NY3d at 583} rejected such requests for blanket exemptions, as they are antithetical to FOIL's interest in open government (see Gould, 89 NY2d at 275; see Friedman, 30 NY3d at 477). The NYPD's position also contravenes FOIL's general policy in favor of disclosure and our instruction that all the statutory exemptions are to be narrowly interpreted to maximize public access to government records (Fink, 47 NY2d at 571; Capital Newspapers, 67 NY2d at 566). Of course, the NYPD is free, like any other agency that invokes a FOIL exemption, to articulate a particularized and specific basis for nondisclosure of any individual disciplinary ruling, including that the precise document's organizational structure and rhetorical style constrains the NYPD from effectively redacting all information that potentially identifies police officers.
The NYPD's alternative argument that it need not disclose the rulings because the necessary redaction would be so extensive as to render the documents unrepresentative of the underlying analysis is unavailing. As the NYCLU argues, redaction by definition leaves the document "incomplete" and has never been a reason to deny a FOIL request. It bears repeating that FOIL affords the public "the means to obtain information . . . to 'make intelligent, informed choices with respect to both the direction and scope of governmental activities' " (Capital Newspapers, 67 NY2d at 566, quoting Fink, 47 NY2d at 571, citing Public Officers Law § 84). It would turn FOIL on its head to apply it as a means by which government may withhold information based on some amorphous concept of what the general public understands. It is not for government to decide what the public makes of the information disclosed. Indeed, the NYPD's implicit suggestion—that the public is better served by withholding information it cannot understand—ignores the legislative declaration that "government is the public's business" (Public Officers Law § 84). In any case, the proper response in line with the public policy favoring disclosure is to provide more, not less (or no), information about the workings of government. That is particularly true with respect to the documents at issue here, which involve complaints about police abuse, a matter of long-standing public concern and public debate that implicate the integrity of our law enforcement and criminal justice systems. In the words of Matter of Fink, adopted and rephrased to apply to the disciplinary rulings at issue here, disclosure allows the public to understand how we "police the police" (see Fink, 47 NY2d at 571, quoting Robbins Tire & Rubber Co., 437 US at 242).
{**32 NY3d at 584}Nevertheless, the majority concludes that Civil Rights Law § 50-a prohibits any disclosure of covered personnel records, regardless of whether the underlying statutory purpose is served (majority op at 
565). Its analysis is unpersuasive because it: (1) ignores our precedent explaining the interplay between FOIL and Civil Rights Law § 50-a; (2) contravenes our rules of construction by converting a statute with a singular application into an all-[*13]encompassing confidentiality law; (3) misapplies the disclosure process of Civil Rights Law § 50-a (2) and (3); and (4) limits the common practice of redaction, sanctioned by this Court as a method specifically tailored to achieve the intended purposes of FOIL and Civil Rights Law § 50-a.
The majority's adoption of a categorical exemption from disclosure ignores that we have eschewed blanket exemptions. More significantly, it fails to recognize that Civil Rights Law § 50-a is not a general confidentiality statute, but instead a legislative response to the use of employment evaluation records to embarrass and harass officers. Contrary to our precedent, the majority has expanded the application of section 50-a by ignoring our directive that nondisclosure "be limited to the extent reasonably necessary to effectuate the purposes of Civil Rights Law § 50-a," i.e. to prevent the use of personnel records against an identified officer (Daily Gazette, 93 NY2d at 157). If the officer's identity is protected from disclosure, then the animating legislative concern is no longer relevant. Our case law harmonizes the statutes in just this way, for the Civil Rights Law § 50-a "statutory exemption must be tempered when it interacts with the competing, equally strong legislative policy of open government through broad public access to governmental agency records embodied in the FOIL legislation" (id.). Thus, personnel records with "[a] remote or no such potential use [to harass or embarrass an officer] fall outside the scope of the statute" (Prisoners' Legal Servs., 73 NY2d at 33).
Here, the legislative concern that motivated enactment of Civil Rights Law § 50-a is not implicated by the NYCLU's request for disciplinary rulings stripped bare of all information that identifies particular officers. In contrast, secreting this information undermines the significant public policy of FOIL, and conceals government practices that the legislature did not intend to shield from public scrutiny and debate.
The majority rejects the NYCLU and NYPD's claim that redaction of Civil Rights Law § 50-a records is permissible, {**32 NY3d at 585}concluding that redaction "would eviscerate the legislature's mandate" because, under the majority's view, Civil Rights Law § 50-a provides the only legal process by which a court may order disclosure of personnel records (majority op at 
567). The majority asserts that section 50-a and other statutes "expressly operate to guarantee confidentiality notwithstanding FOIL's permissive disclosure regime" (majority op at 
567). However, section 50-a, and the other statutes cited by the majority do not expressly provide for such a mandatory exemption from FOIL. Indeed, the term "notwithstanding," which typically indicates the legislature's intent for a provision to preempt other confliction laws, is notably absent from the text of the statute (People v Mitchell, 15 NY3d 93, 97 [2010]; see e.g. CPL 410.80 [2]; Education Law § 2854 [1] [a]). On the other hand, FOIL expressly grants agencies with discretion to disclose records that fall within one of its exemptions (Public Officers Law § 87 [2] ["such agency may deny access to records or portions thereof that (fall within an enumerated exemption)" (emphasis added)]). To reach its dispositive conclusion, the majority essentially adds a "notwithstanding" clause into section 50-a (and the other statutes cited) and interprets the word "may" as its mandatory opposite, "shall," all in contravention of our rules of construction and well understood definitions (see McKinney's Cons Laws of NY, Book 1, Statutes § 177; Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 255 n 1 [2004] ["We have previously recognized that the term 'may' is permissive . . . We will not presume that the Legislature meant 'shall' when it said 'may' "]).
The majority's reliance on Prisoners' Legal Servs. for the proposition that personnel records may only be disclosed by court order pursuant to Civil Rights Law § 50-a (3) in the context of pending litigation (majority op at 
566) is misplaced. Not only is this contradicted by the plain language of FOIL, which provides an "agency may deny access to records" that are exempted by state or federal statute, it turns on a selective, unrepresentative, reading of Prisoners' Legal Servs. There, the Court stated that Civil Rights Law § 50-a "permits court-ordered disclosure of personnel records within its protection—i.e., those that have potential use in harassing and embarrassing officers in litigation—only in the context of an ongoing litigation" (73 NY2d at 33 [emphasis omitted]). Accordingly, the process for court-ordered disclosure outlined in Civil Rights{**32 NY3d at 586} Law § 50-a (3) applies only where the records have the potential to harass and embarrass officers in litigation. The provision does not limit disclosure outside the litigation context.
Simply stated, we have previously sanctioned redaction in the context of a FOIL request for Civil Rights Law § 50-a records (Daily Gazette, 93 NY2d at 159), and it would be anomalous to deny disclosure of these disciplinary rulings, redacted of all personal identifying information leaving only the legal analysis as applied to non-identificatory facts, when this Court has previously upheld disclosure of personnel employment records of a named [*14]police officer (Capital Newspapers, 67 NY2d at 569). Indeed, if the majority's interpretation were correct, our prior cases would have simply held that Civil Rights Law § 50-a is an absolute bar to FOIL disclosure, and that would have ended the matter. That did not happen. Alternatively, the legislature would surely have amended Civil Rights Law § 50-a if it deemed those prior cases to have misconstrued the statute and the legislative intent. That did not happen. The conclusion to be drawn is that both statutes can coexist and be harmonized by deletion of all information that identifies a police officer.
The majority's further reliance on Matter of Short v Board of Mgrs. of Nassau County Med. Ctr. (57 NY2d 399 [1982]) and Matter of Karlin v McMahon (96 NY2d 842 [2001]) is similarly unpersuasive as both cases are distinguishable. First, neither required interpretation of Civil Rights Law § 50-a; both involved different statutory provisions and legislative concerns. Short concerned a request for copies of 29 abortion records and required interpretation of three statutes that exempted medical information from disclosure,[FN3] and Karlin considered a request for records identifying a victim of sexual assault, which are confidential under Civil Rights Law § 50-b (see Short, 57 NY2d 403; Karlin, 96 NY2d at 843). Second, the records in these cases involved countervailing interests not implicated by disclosure of Civil Rights Law § 50-a personnel records—e.g. the trauma an individual may suffer from knowing their medical records have been disclosed, even if anonymously—that should be considered when balancing the purpose of FOIL (Short, 57 NY2d at 406 n 3 [noting that the Court could not assume that protecting the confidentiality of the identity of{**32 NY3d at 587} patients was the exclusive motivation for the statutory exemption]). Third, to the extent that Short—and by extension this Court's memorandum opinion in Karlin that relied on Short—held that redaction was applicable to a single category of exempt records, those whose disclosure would amount to an unwarranted invasion of privacy, the cases should not be followed as this Court has since endorsed the use of redactions to permit disclosure of records that fall within other exemptions (see Matter of New York Times Co. v City of N.Y. Fire Dept., 4 NY3d 477, 487 [2005] [records fell within the exemption for intra-agency materials]; Gould, 89 NY2d at 275 [same]).[FN4]
In fact, our Civil Rights Law § 50-a jurisprudence has expressly embraced the reasoning of Chief Judge Cooke's dissent in Short. He argued that disclosure of the 29 medical records in redacted form would protect the privacy interests of the subject individuals while furthering the purposes of FOIL: "to encourage 'the understanding and participation of the public in government', 'to extend public accountability wherever and whenever feasible', and to forestall thwarting '[t]he people's right to know the process of governmental decision-making . . . by shrouding [the underlying documents and statistics] with the cloak of secrecy or confidentiality' " (Short, 57 NY2d at 407, quoting Public Officers Law § 84). Furthermore, in words that resonate with equal or greater force as relates to records that illustrate the government's disposition of police abuse claims, the dissent argued that a court should be able to order disclosure of records with identifying information deleted{**32 NY3d at 588} because "[t]o deny such a power to the courts in this context is tantamount to granting to the agency an unlimited power to withhold records" (id.).[FN5]
IV.
For the reasons I have discussed, Supreme Court properly ordered disclosure to the NYCLU of redacted copies of the requested disciplinary rulings. The majority's conclusion to the contrary is based on an interpretation of Civil Rights Law § 50-a that does nothing to serve the purpose of that statute and instead undermines New York State's strong public policy of open government, transparency, and public access to government records. It is now for the legislature to correct the majority's error and reaffirm its declaration "that a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government" for after all "government is the public's business" (Public Officers Law § 84).

Wilson, J. (dissenting). The majority's analysis ignores a crucial fact. New York City has determined that the Trial Room hearings are open to the public, subject to confidentiality provisions imposed by the Deputy Commissioner of Trials (see 38 RCNY 15-04 [g]). The Trial Room confidentiality provisions give the subject officer (and others appearing or producing documents) notice and opportunity to seek confidential treatment, whether the underlying protection was afforded by Civil Rights Law § 50-a or otherwise. Undoubtedly, some information in the documents sought by NYCLU was publicly disclosed in Trial Room hearings; there is no basis to withhold that information—already made public in the hearings—from disclosure under FOIL. I agree with both parties and with Judge Rivera that FOIL contemplates the redaction of confidential information,{**32 NY3d at 589}[FN1] and further agree with Judge Rivera that nonconfidential information subject to FOIL cannot be withheld even if the redactions might cause a reader to be misled.[FN2] I.
[*15]We have repeatedly recognized FOIL's strong public policy in favor of transparency and disclosure (see e.g. Matter of Friedman v Rice, 30 NY3d 461, 477 [2017], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979] [noting that FOIL "established a general policy (in favor of) disclosure"]). FOIL "provides the public with broad 'access to the records of government' " (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007], quoting Public Officers Law § 84). To that end, "[a]n agency must 'make available for public inspection and copying all records' unless it can claim a specific exemption to disclosure" (id., quoting Public Officers Law §§ 87 [2]; 89 [3]). Those "exemptions are to be narrowly interpreted so that the public is granted maximum access to the records of government" (Friedman, 30 NY3d at 475, quoting Matter of Data Tree, 9 NY3d at 462).
In view of that strong policy of disclosure, the majority's decision categorically to exclude final Trial Room decisions from FOIL disclosure is unjustified. A proper resolution would recognize the three-way interplay among FOIL, Civil Rights Law § 50-a, and the City's disciplinary hearing procedures, which make the Trial Room hearings public (see 38 RCNY 15-04 [g]). Any information disclosed at a public disciplinary hearing is subject to FOIL disclosure and cannot be withheld, even if that information includes personnel records protected by section 50-a. However, if the Deputy Commissioner of Trials has designated certain information as confidential, both section 50-a and the City's procedures may exempt it from disclosure{**32 NY3d at 590}—at least in this case, because the parties have stipulated that the Trial Room Decisions are "personnel records" within the meaning of section 50-a.
The Appellate Division held that, although the Trial Room proceedings are open to the public, that disclosure does not diminish an officer's interest, protected by section 50-a, in having that information kept confidential; in contrast, section 50-a and the City procedures opening the trials to the public "are distinct questions governed by distinct statutes and regulations" (148 AD3d 642, 643 [1st Dept 2017]). That analysis is incorrect. As the Appellate Division noted:
"The question of whether respondents may, in their discretion, turn over redacted decisions, is not before us (see e.g. Short, 57 NY2d at 404 ['Nothing in the Freedom of Information Law . . . restricts the right of the agency if it so chooses to grant access to records within any of the statutory exceptions, with or without deletion of identifying details'])" (id. at 643 n).
By opening the Trial Room proceedings to the public, the City has chosen to disclose information relevant to that proceeding. In doing so, the City has determined that the confidentiality of an officer's identity, the nature of the charged offense, or the evidence supporting that charge—otherwise protected by section 50-a—is of insubstantial weight compared to the countervailing interest in public disclosure. Neither party here suggests that the City has acted beyond its authority in doing so, or that such disclosure violates section 50-a in the first place. Subsequent disclosure of the same information under FOIL cannot, therefore, undermine those same concerns. Having decided to make the Trial Room hearing public, the NYPD cannot reasonably claim that those portions of the final decision that reveal only what was publicly revealed in the hearing are exempt under section 50-a. None of our prior decisions relied on by the majority remotely suggests that information disclosed by a governmental entity to the public, pursuant to rules promulgated by that entity, cannot be obtained by the public through a FOIL request.
The City's procedures do permit information presented in a disciplinary hearing to be kept confidential; that allowance fulfills section 50-a's requirement that an officer have the opportunity to be heard in response to a request to disclose covered personnel information. The Rules of the City of New{**32 NY3d at 591} York (the Rules) grant the Commissioner of Trials the power to close portions of the hearing:
"Hearings shall be open to the public unless the Deputy Commissioner of Trials finds a legally recognizable ground for closure of all or a portion of the Hearing. The Deputy Commissioner of Trials may also exclude witnesses from the Hearing room during proceedings other than their own testimony" (38 RCNY 15-04 [g]).
[*16]
Section 50-a constitutes a "legally recognizable ground" on which to keep certain information presented in a disciplinarily hearing confidential. If an officer (or other person) requests that certain information be kept confidential, the Rules empower the Deputy Commissioner of Trials to accept that request.
Such a confidentiality determination complies with section 50-a's mandate that the police officer have the opportunity to be heard on any disclosure requests. Section 50-a contains two exceptions to its general confidentiality requirement: personnel records may be disclosed if the officer consents to disclosure (see Civil Rights Law § 50-a [1]), or if a court authorizes disclosure (see Civil Rights Law § 50-a [3]). The law establishes a procedure to obtain a court order, aimed to protect the interests of an officer whose records are the subject of a disclosure request: in order to authorize the release of personnel records protected by section 50-a, "the judge must review all such requests and give interested parties the opportunity to be heard" (Civil Rights Law § 50-a [2]). In a disciplinary hearing, the subject officer is represented by counsel and has the opportunity to ask that any information be kept confidential; by failing to request confidentiality for certain information at a public hearing, an officer has consented—or at least has waived the right to consent—to public disclosure. If the officer does request confidentiality, the Deputy Commissioner's determination to deny that request and disclose the information publicly is, in effect, a court order. In either case, the officer has had an opportunity to be heard.
Accordingly, I disagree with the majority's conclusion that final Trial Room decisions are categorically exempt from FOIL. Because the City has made a decision to reveal some information to the public as part of those proceedings, in cannot withhold that same information when another party seeks to obtain{**32 NY3d at 592} it under FOIL. Consistent with my analysis, however, I also do not agree with Judge Rivera's approach that redaction of all personally identifying information is required, though it might be within the NYPD's authority to do so in some cases.
The proper way to consider what the NYPD must produce is to compare each Trial Room decision with the confidentiality determinations, if any, made by the Deputy Commissioner of Trials during that proceeding. If, for example, the Deputy Commissioner did not close the proceeding when the name of the officer was discussed, that information could not be redacted in responding to a FOIL request, and any other information that the NYPD sought to withhold based on the fact that it might disclose the officer's name could also not be withheld. On the other hand, if the Deputy Commissioner closed the hearing for discussion of an officer's alcoholism and treatment, the NYPD should redact that information from any documents sought in a FOIL request.
My approach fully addresses the majority's concern that too broad an interpretation of FOIL's policy for transparency would allow third parties to use FOIL to override statutory protections for other types of information, such as police records on victims of sex offenses, medical records, prospective jurors or attorney work product. I agree that "[n]othing in FOIL authorizes a petitioner—or a government agency—to exercise 'absolute discretion' to override these critical statutory protections or their promise of confidentiality" (majority op at 
568).[FN3] Allowing FOIL [*17]disclosure of information previously disclosed to the public at a disciplinary hearing, while allowing redaction of information kept confidential at the hearing, allows no such{**32 NY3d at 593} override.[FN4] My interpretation hinges on the City's public trial procedures and, therefore, cabins the disclosure to the context of confidential police records and public police disciplinary hearings in New York City—the issue presented in this case.
Accordingly, I would reverse and remit for redactions made to excise only such information as was deemed confidential by the Deputy Commissioner of Trials in each of the subject Trial Room hearings.
Chief Judge DiFiore and Judges Fahey and Feinman concur; Judge Stein concurs in result in an opinion; Judge Rivera dissents in an opinion; Judge Wilson dissents in a separate dissenting opinion.
Order affirmed, with costs, and certified question not answered as unnecessary.

Footnotes

Footnote 1:Pursuant to a Memorandum of Understanding executed in 2012 by the CCRB and the NYPD, most substantiated complaints are now prosecuted by the CCRB (see 38 RCNY 15-12).

Footnote 2:The statute also permits disclosure to certain government agencies that require access to carry out their official functions (Civil Rights Law § 50-a [4]).

Footnote 3:Section 50-a's mandatory confidentiality provision is also unaffected by the "crucial fact" that NYPD disciplinary hearings are open to the public (Wilson, J., dissenting op at 
588). Even if a New York City regulation could displace a state law (it cannot), the fact that "some information" in a record has, at some time, been "publicly disclosed" does not automatically surrender its confidentiality (Wilson, J., dissenting op at 
588). For instance, records containing "[t]he identity of any victim of a sex offense" must be kept "confidential" from public inspection (Civil Rights Law § 50-b [1]), even though courts are not required "to exclude the public from any stage of the criminal proceeding" involving a sex offense (Civil Rights Law § 50-b [4]). Nor would the dissent's proposal create sound policy. Instead, it would perversely discourage municipalities from allowing public hearings, and encourage officers to seek confidential treatment of their hearings, in order to avoid any implication that they have somehow "consented" to broader public disclosure (Wilson, J., dissenting op at 
591). The result would be less disclosure, not more.

Footnote 4:Notably, FOIL's federal counterpart contains a much broader redaction provision that allows for redacted disclosure under any of Freedom of Information Act's enumerated exemptions (see 5 USC § 552 [b] ["Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"]). Even though a number of FOIL's provisions were "patterned after the Federal analogue" (Matter of Lesher v Hynes, 19 NY3d 57, 64 [2012]), the New York Legislature has never enacted similar statutory redaction language.

Footnote 5:Contrary to the dissent's contention (Rivera, J., dissenting op at 
587), the holdings of Short and Karlin—and our holding today—apply only to Public Officers Law § 87 (2) (a), the FOIL exemption at issue. To the extent another FOIL exemption might authorize redaction as a means of separating "exempt" from "non-exempt" material within a record (see Matter of Xerox Corp. v Town of Webster, 65 NY2d 131, 133 [1985]), that issue is not before us.

Footnote 1:The enumerated exemptions consist of records or portions thereof that
"(a) are specifically exempted from disclosure by state or federal statute;
"(b) if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article;
"(c) if disclosed would impair present or imminent contract awards or collective bargaining negotiations;
"(d) are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise;
"(e) are compiled for law enforcement purposes . . . ;
"(f) if disclosed could endanger the life or safety of any person;
"(g) are inter-agency or intra-agency materials . . . ;
"(h) are examination questions or answers which are requested prior to the final administration of such questions . . . [;]
"(i) if disclosed, would jeopardize the capacity of an agency or an entity that has shared information with an agency to guarantee the security of its information technology assets . . . [;]
"(o) are photographs, microphotographs, videotape or other recorded images prepared under authority of section eleven hundred eleven-e of the vehicle and traffic law" (Public Officers Law § 87 [2] [a]-[i], [o]).
Footnote 2:Other states with similar freedom of information statutes also interpret exemptions to such laws as defining an agency's obligations to disclose rather than imposing a duty to withhold (see e.g. Data Tree, LLC v Meek, 279 Kan 445, 455, 109 P3d 1226, 1234 [2005] ["The KORA does not prohibit disclosure of records contained within these exceptions but makes their release discretionary with the agency's official records custodian"]; Evening Post Publ. Co. v City of North Charleston, 363 SC 452, 457 n 5, 611 SE2d 496, 499 n 5 [2005] ["That a record is exempt does not mean that the government has a duty of non-disclosure. Rather, an exemption provides the government with discretion to either withhold the record or release it"]).

Footnote 3:The three statutes at issue were Public Health Law §§ 2803-c (3) (f), 2805-g (3), and Social Services Law § 369 (3) (Short, 57 NY2d at 403).

Footnote 4:The majority argues that the use of redactions for other exemptions is irrelevant as the holdings of Short and Karlin applied solely to Public Officers Law § 87 (2) (a). The majority's assertion fails to recognize the reasoning of Short, which essentially held that redactions are applicable only to statutory exemptions that expressly allow for them (Short, 57 NY2d at 405). The fact that this Court has since endorsed the use of redactions for other exemptions, which do not provide for redactions is thus instructive.
In addition, the majority suggests that I take issue with Short and Karlin because those cases make bad policy (majority op at 
570). The same could be said of the majority's reading of Daily Gazette's interplay analysis. However, my disagreement with the majority's reading of Short and Karlin is not policy based. These cases should not be followed because the reasoning in Short has since been undermined and both cases are inapplicable to the question of whether section 50-a records may be disclosed under Public Officers Law § 87 (2). Far from advocating for "judicial revision of FOIL," as the majority implies (majority op at 
570), I maintain that we follow this Court's prior ruling that section 50-a "be tempered" when it interacts with FOIL (Daily Gazette, 93 NY2d at 157).
Footnote 5:I have no occasion to consider whether an individual officer must be provided the opportunity to respond to a FOIL request for documents that fall within Civil Rights Law § 50-a. However, Capital Newspapers acknowledged that "FOIL does not specifically grant a public employee the right to resist disclosure of agency records" even though the Court did not "reach the issue whether a public employee has a cause of action under FOIL to prevent disclosure" (67 NY2d at 566 n). I similarly have no occasion to consider whether, assuming an officer lacks standing to object to a FOIL request, a court may, as Supreme Court did here, permit an officer to appear and argue against disclosure.

Footnote 1:Neither party argues that the final Trial Room decisions are exempt from FOIL. The parties agree that FOIL requires redaction; the NYPD does not argue that the documents are not disclosable under FOIL but instead maintains that disclosure is permitted "only when it is clearly possible to do so without risking disclosure of the identities of the officers at issue," in order to reconcile the competing concerns of transparency, advanced by FOIL, and privacy, advanced by Civil Rights Law § 50-a.

Footnote 2:Contrary to the NYPD's argument, the sample redactions it provided are not "unintelligible," nor do they appear to "present a decontextualized, and thus misleading, representation of the decision's reasoning." I have read them in redacted and unredacted form and find nothing misleading about the redacted versions. For reasons I explain herein, these are not the correct redactions in any event.

Footnote 3:The majority's footnote 3 misunderstands the function of Civil Rights Law § 50-b (4) (see majority op at 
568 n 3). Section 50-b (1) protects certain information from disclosure. Although section 50-b (4) specifies that courts are not required "to exclude the public from any stage of the criminal proceeding" involving a sex offense, that subdivision does not authorize the disclosure of information protected by section 50-b (1) in a proceeding in open court. Instead, it simply provides that a court need not remove spectators from a proceeding as its sole method for complying with section 50-b (1). A court has myriad other methods at its disposal to keep confidential information protected by section 50-b (1); for instance, it could instruct counsel to refrain from raising that information in its examination of a witness; it could enter into the record sealed stipulations of those facts, or it could accept into evidence documents establishing the facts, which could then be sealed, with redacted versions on the public record.

Footnote 4:Nor does allowing such disclosure "discourage municipalities from allowing public hearings" (majority op at 
568 n 3); hearings like the Trial Room would remain public, save for select portions that would disclose information protected by section 50-a.